SHARP, Respondent, v. HAWKINS, Appellant.

**St. Louis Court of Appeals, February 4, 1908.**

**SALES: Cash Sales: Executory Contract.** Where one party sold an animal to another for cash, a small part of the purchase price being paid and the animal being left with the seller until the balance should be paid, the contract was executory and the animal having died before delivery, the seller could not recover the balance of the purchase price.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED.

*Robert Lamar* and *A. J. Arthur* for appellant.

Under the undisputed facts in this case, the plaintiff is not entitled to recover.    Instruction number 7 asked by the defendant should have been given, also instructions numbers 1 and 6, refused by the court, declared the law correctly, and should have been given, if the case was to be submitted to the jury at all.    This was a contract of sale and not a sale.    No title passed.    Benjamin on Sales (7 Am. Ed.), sec. 185, p. 165; Tiedeman on Sales (1 Ed.), sec. 87, 207, 208; Benjamin on Sales (4 Am. Ed.), p. 349 et seq; Davidson v. Rozier, 23 Mo. 384; Kirby v. Johnson, 22 Mo. 354; Ober v. Carson, 62 Mo. 214; Matthews v. McElroy, 79 Mo. 204; Bank v. Mill and Land Co., 152 Mo. 157; Ridgeway v. Kennedy, 52 Mo. 24; Strother v. Lumber Co., 200 Mo. 656; Johnson, Brinkman Co. v. Bank, 116 Mo. 570.    In the absence of other agreement, express or implied, concerning the time of payment for chattels sold, the sale is made impliedly for cash, and title does not pass to the vendee until payment or tender of payment is made.    Frazier v. Railroad, 104 Mo. App. 355.    Where the sale is for cash, payment of the purchase price is a condition precedent implied by law, and the title does not vest in the

purchaser until he performs the condition, unless the seller waives payment, and the burden of showing such waiver in this case was upon the plaintiff, consequently, instruction number 1, refused by the court, correctly declares the law.    Hall & Robinson v. Railroad, 50 Mo. App. 179; Com. Co. v. Railroad, 72 Mo. App. 437; Straus & Co. v. Hirsh & Co., 63 Mo. App. 95; Parmlee v. Catherwood, 68 Mo. 101; Little v. Page, 44 Mo. 412.

*Wm. P. Elmer* for respondent.

The jack was sold without condition or reservation and the presumption of law is that the contract is a sale, and the title passed to defendant, in advance of actual delivery, as it was a specific chattel ready for delivery, and at defendant's disposal.    In such case title passes in advance of actual delivery.    24 Am. and Eng. Enc. Law (2 Ed.), 1051; 24 Am. and Eng. Enc. Law (2 Ed.), 1068; Collins v. Lumber Co., 128 Mo. 451.    Hamilton v. Clark, 25 Mo. App. 428; Tooney v. Goodbey, 57 Mo. App. 235; Harding v. Manard, 55 Mo. App. 364. A sale is not executory because there remains something to be done by the parties, i. e., payment of purchase price.    This is especially so on the sale of a specific chattel.    In this case plaintiff was not to perform any other act.    Smith v. Bank, 107 Mo. App. 178; Halliday v. Lesh, 85 Mo. App. 285; Ober v. Carson, 62 Mo. 209; 24 Am. and Eng. Enc. Law (2 Ed.), p. 1045, 1051.

BLAND, P. J.—The action is to recover a balance of $295, alleged to be due on the sale of a jack by plaintiff for $300.    The answer was a general denial. Plaintiff recovered judgment from which defendant appealed in the usual way.    The evidence shows that both parties reside in Dent county, but a considerable distance from each other.    Defendant wanted to purchase a jack and learning that plaintiff had one for sale went

to plaintiff's house late in the afternoon of January 31, 1906, to see the jack.   On the following morning defendant looked at the jack and agreed to pay plaintiff his price ($300) and handed him five dollars, which plaintiff retained.   Defendant requested plaintiff to deliver the jack at Salem, the county seat of Dent county, but plaintiff declined to do so, and defendant arranged with plaintiff's son to help him away with the jack when he should return for him.   On the fourteenth of the month defendant returned to plaintiff's house for the purpose of getting the jack.   On his arrival in the afternoon he was informed by plaintiff that the jack was "off his feed."   To prepare the jack for traveling, plaintiff and defendant nailed some old shoes on his feet and, at defendant's suggestion, as testified by plaintiff, the jack was drenched with salts and covered for the night with a wagon sheet to prevent him from taking cold.   On the following morning the jack was still ailing, and plaintiff testified defendant thought he was unable to travel and asked him if he would deliver him when he got well; that he told defendant he did not care to deliver the jack only at his house and he could come and get him.   Defendant then returned to his home and on the night of the same day or on the following day the jack died.

On cross-examination plaintiff testified as follows:

"Q.   You say that you made the remark, when he paid you, that that was a very small forfeit for a trade of that sort?   A.   Yes, sir.

"Q.   What did you mean by that?   A.   He said that would make the trade good and I said that I would take care of the jack just as I had been doing, but I would not be responsible for the jack.

"Q.   There was no contract by which you were to be paid for keeping him until he came back.   A.   No, sir. . . . .

"Q.   You did not understand that you were to de-

liver the jack and he was to take him away until you got the balance of the money? A. No, sir, I was to deliver him there.

"Q. Was not it your understanding that when he came back to receive the jack that he would pay you the two hundred and ninety-five dollars? A. Mr. Hawkins said he would be back about the fifteenth of the month.

"Q. Did he say he would pay you then? A. He said that he would come and get the jack and pay me the rest.

"Q. You had already said that five dollars was a small forfeit on a trade of that size? A. Yes, sir, and he said he did not have the rest of the money."

Defendant testified as follows:

"I went to J. H. Sharp's on the last day of January and stayed over night with him and we looked at the jack that night and the next morning we looked at him again and I got my pony and started home and requested Mr. Sharp to take off a part of the price and after we had got out to the old store building I then made him a proposition to divide the take off, split the difference and he refused to do it and I said that I should take an option on the jack and pay five dollars down and come back on the fifteenth of the month and pay the balance, the two hundred and ninety-five dollars and we had a conversation to that effect, and Mr. Sharp, when I drew out my purse and took out a five dollar bill and handed it to him, remarked to me that that was a small forfeit on as big a trade as that and I said that it was just as binding on me as if it was fifty or five hundred and I said that I would come back and pay the balance and take the jack and on the fifteenth of the month I went to his place and before he started to the house he said the jack was off his feed and he also told me that his mares had been off their feed and he had gone to the mill and got some ground feed and fed it to the jack and he supposed he had given him a little too much, and

among other things he said that he had been doctoring him at that time.

"Q. What did he say, if anything, at that time, about what his loss would be in case the jack died? . . . A. My recollection is that he would lose two hundred dollars, the purchase price, if the jack died, two hundred dollars is what he claimed he paid for the jack and that would be his loss if the jack died.

"Q. How came that jack to be shod, or who suggested shoeing him? A. Mr. Sharp suggested that and I said if the jack was all right the next morning I would receive him and he suggested that we shoe him and he went to the shop and prepared some old shoes and I put on one shoe and he put on the balance and then he turned to Will and told him to put him in and see if he would eat and he did so and I went along to see if he would eat and he refused to eat and of course I have done enough trading in the country—

"Q. Did you pay him the other two hundred and ninety-five dollars there? A. No, sir.

"Q. Did he make any demand for it? A. No, sir, he only asked me that question, he said, 'In case the jack dies what will you be willing to do,' and I says, 'What the law says between man and man I will do.'

"Q. Did you receive the jack at any time or did he deliver the jack at any time. A. I did not, at that time, receive him or make any pretention of receiving him, I took option on it—"

At the close of all the evidence defendant moved the court to instruct the jury that plaintiff could not recover. The refusal of the court to grant this instruction is assigned as error. According to the evidence of both parties, the sale was for cash and only five dollars of the purchase price was paid. The contract was therefore executory and defendant had no right or property in the jack until the full purchase price was paid. Had he taken the jack away, plaintiff might have

recovered possession of him in an action of trover [Benjamin on Sales, sec. 185.] Tiedeman says, "If no other express agreement is made, it is presumed that the sale is for cash, and the seller is not liable to the buyer on the contract of sale, unless tender is made of the price." [Tiedeman on Sales, sec. 207.]

In Frazier v. Railroad, 104 Mo. App. l. c. 359-60, 78 S. W. 679, this court, speaking through REYBURN, J., said: "It is a legal principle generally recognized, that when no express provision is made for time of payment, a sale of personalty is presumed by law to be a cash transaction, and the delivery of the property and the payment of the purchase price are concurrent and the buyer is not entitled to demand, nor to receive delivery or possession of the goods, the subject of the contract, without proffer of the purchase price or its actual payment. In the absence of other arrangement, express or implied, concerning the time of payment of the price and providing for future payment, or where the parties remain entirely silent respecting it, the rule is clearly established, that the sale is made impliedly for cash, and title to the property sold does not pass to the vendee until payment or tender of payment has been made. The payment of the purchase price becomes a condition precedent by legal implication, and except in the event of waiver by the vendor, title does not vest in the buyer until after performance of such condition."

In Commission Co. v. Railway, 72 Mo. App. 437, it was ruled by the Kansas City Court of Appeals, that where a sale is made for cash on delivery, and though delivery is made, the vendee fails to pay the purchase price, the title remains in the seller.

In Johnson-Brinkman Co. v. Central Bank, 116 Mo. 559, 22 S. W. 813, it was held, that where on a cash sale the vendee fails to pay the purchase money, the vendor may avoid the sale. This he could not do if

title passed by mere delivery of the subject of the sale. In 24 Am. and Eng. Ency. of Law, pp. 1053-54, the doctrine in most of the States is stated to be that where the sale is for cash, payment must precede the transfer of title.    It is further stated, however, that the better doctrine, adhered to in a few of the States, "appears to be that the transfer of title takes place immediately upon the conclusion of the contract, notwithstanding the fact that the transaction is for cash, the seller having a lien for the price which entitled him to retain the possession of the chattel until the price is paid, but in the meanwhile the goods are at the risk of the buyer." The doctrine in this State is to the contrary, as shown by the cases cited, supra.    On the undisputed evidence, plaintiff was not entitled to recover, and defendant's instruction in the nature of a demurrer to the evidence should have been given.

The judgment is reversed.    All concur.