TURNER LUMBER & INVESTMENT COMPANY, APPELLANT, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, RESPONDENT.—34 S. W. (2d) 1009.

Kansas City Court of Appeals. January 5, 1931.

*Goodwin Creason* for appellant.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts* and *Ilus M. Lee* for respondent.

BLAND, J.—This is an action in conversion for two carloads of lumber. The damage claimed for the conversion of the first car was $628.78 with interest and the second $812.58. The case was tried before the court without the aid of a jury. At the close of plaintiff's testimony the court declared the law to be that plaintiff was not entitled to recover and rendered judgment in favor of defendant. Plaintiff has appealed. This is the second appeal in the case. [See Turner Lumber & Investment Co. v. C., R. I. & P. Ry. Co., 16 S. W. (2d) 705.]

The facts show that on June 26 and 29, 1925, the cars of lumber in question were sold to plaintiff, a corporation, located in Kansas City, Missouri, by the Continental Mill & Lumber Company. The

lumber was shipped by that company under straight non-negotiable bills of lading from Waveland, Arkansas to Wister, Oklahoma (a diversion point of the defendant railway) over the line of the defendant. The bills of lading for the two cars were issued respectively on June 26 and June 29, 1925. These bills named the mill company as consignor and the plaintiff as consignee, without any reservations or qualifications. Upon the bills of lading were endorsed the words ''for re-consignment.'' Under a general custom in the lumber trade and the practise had between the mill company and plaintiff in prior sales and shipments of lumber it was understood that the consignor would draw a draft upon the consignee for 80% of the estimated value of the lumber in the cars and it was the custom and general understanding that these drafts would be honored and it was so understood by the plaintiff in the present instance.

Upon each of the invoices covering the two cars of lumber in question were endorsed the words ''draft $400.'' Four hundred dollars was estimated by the mill company to be 80% of the value of the lumber in each car. These invoices and drafts were mailed by the mill company to plaintiff in Kansas City. When they were received by plaintiff it understood that drafts in those amounts would be forwarded by the mill company to be honored by thep laintiff when presented. The mill company caused to be sent to a bank in Kansas City drafts for these amounts which were presented to plaintiff for payment two or three days after it received the bills of leading and invoices. However, payment was refused. The first draft was protested for non-payment on June 29, 1925 and the second on July 1, of that year.

Plaintiff sold the cars of lumber to the King Lumber Company of Kansas City and on or about July 2, 1925, after plaintiff had received the bills of lading and after it had refused to pay the drafts, it notified the defendant by telegraph and letter to divert the cars, which were then at Wister, Oklahoma, requesting that the heading of the way-bills show plaintiff as consignor and the King Lumber Company as consignee, and mailed the drafts to the defendant. However, on July 15, 1925, defendant returned to plaintiff the bills of lading and refused to divert the shipments on the ground that the shipper had ordered the cars held and diverted to other consignees.

The facts further show that, on account of defective lumber and shortages in prior shipments made by the mill to plaintiff, the mill company was indebted to plaintiff in the sum of $1170 by reason of the fact that plaintiff had paid for the lumber in the prior shipments on the theory and basis that there was no defective lumber or shortages. However, there was no admission on the part of the

mill company of this indebtedness. There was no evidence of any off-set of demands, or compromise of claims or of debts, between plaintiff and the mill company. After the plaintiff refused to pay the drafts covering the two cars of lumber in question the mill company offered to accept a $500 payment upon the lumber but plaintiff refused to accept this proposition and the mill company notified it that it would proceed to divert the shipments, which it did. The evidence shows that plaintiff made no payment whatever on the lumber. The amount sued for was shown to be the value of the lumber in the cars at Waveland, Arkansas, with which amount plaintiff had credited the mill company.

It is insisted by the plaintiff that it made out a case of conversion of the lumber and that the court erred in giving the declaration of law above referred to. It is plaintiff's contention that the Federal Bill of Lading Act "does *not* define the *substantive* rights of ownership as between consignor and consignee of goods in the physical possession of the carrier in an interstate shipment. That statute deals only with the *remedy*, or method of procedure, when such contest arises."

It is further claimed that if the transaction in question between plaintiff and the mill company was a Missouri contract, then the Missouri Statute and decisions not in conflict with the Federal Act, "having to do with the substantive right of title to the lumber in question control;" that if it was an Arkansas contract, the Missouri law governs, because the Arkansas law is not pleaded and the presumption is that the Arkansas law is the same as that of Missouri; that consequently, the ownership of this shipment is determined by paragraph "a" of section 13562, Revised Statutes 1919, which is part of the Missouri Bill of Lading Act, and reads as follows:

"Where by the bill the goods are deliverable to the buyer or to his agent, or to the order of the buyer or of his agent, the consignor thereby transfers the property in the goods to the buyer;" that as the bills of lading in question were made to plaintiff as consignee and were delivered to plaintiff, without any drafts attached, the title to the lumber was transferred to it.

It is further contended by plaintiff "that in case of the delivery by the consignor of a straight bill of lading in an interstate shipment to the consignee with no draft attached, the carrier, under the Federal Bill of Lading Act, can make no defense of an alleged right or title of a third person in an action brought by the consignee against the carrier for conversion, unless the carrier shall bring the third person into the action, or bring a separate action in which the consignee and the third person are made parties, to determine the ownership of the property in question;" that the Federal Bill of Lading Act in this respect was not complied with by defendant.

It is the contention of the defendant that under the Federal Bill of Lading Act, it was in duty bound to deliver the lumber to the person lawfully entitled to its possession; that as the lumber was sold upon the condition that plaintiff would honor the drafts in question and that, as plaintiff refused to pay them, the title to the lumber did not pass to plaintiff but remained in the mill company and therefore, defendant rightfully complied with the diversion order of that company.

It is well settled that one may not maintain a suit in trover or conversion who has neither the right of property in nor possession of the goods (Frazier v. Railroad, 104 Mo. App. 355, 360; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558); that under the common law the vesting of the title to the goods in the purchaser may be made to depend upon his performance of some condition and that the purchaser must comply with the condition before he can acquire title to the goods. That condition may be the payment of the price and in such a case unless the price is paid no title passes, although possession of the goods is given to the purchaser. [35 Cyc. 318, 319, 322, 323, 324, 325; 23 R. C. L. 1384, 1385; 24 R. C. L. 23, 440, 441, 445; Coleman v. Reynolds, 207 Mo. 463; Johnson-Brinkman Co. v. Central Bank, supra; Howard v. Haas, 131 Mo. App. 499; Sharp v. Hawkins, 129 Mo. App. 80; Johnson v. Parrott & Barnes, 92 Mo. App. 199; Johnson-Brinkman Co. v. Mo. Pac. Ry. Co., 72 Mo. App. 437; Strauss-Pitts Co. v. Hirsch & Co., 63 Mo. App. 95; Hall & Robinson v. Mo. Pac. Ry. Co., 50 Mo App. 179.] At common law possession of the bill of lading by the consignee or holder was strong evidence of title and right to the possession of the goods, but was only prima-facie and not conclusive. [Scharff v. Meyer, 133 Mo. 428, 445; Frazier v. Railroad, supra.]

In our opinion neither the Federal Bill of Lading Act (U. S. Code Ann. Title 49, sections 81-124) nor the uniform bill of lading act adopted in this State in 1917 (see sections 13523, 13576, Revised Statutes 1919) changed the common law rule in the respects noted. [Banik v. C. M. & St. P. R. R. Co., 147 Minn. 175, 181.] Under the provisions of section 88 (c) of the Federal Bill of Lading Act, the burden is upon the carrier to establish the existence of a lawful excuse or refusal or failure to deliver the goods in compliance with the demand of the consignee or the holder having possession of the bill of lading.

Section 89, U. S. Code Ann. Title 49, p. 396, provides:

"A carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is—

"(a)   A person lawfully entitled to the possession of the goods, or

"(b)   The consignee named in a straight bill for the goods, or

"(c)   A person in possession of an order bill for the goods, by the terms of which the goods are deliverable to his order; or which

has been indorsed to him or in blank by the consignee, or by the mediate or immediate indorsee of the consignee.''

Section 90 provides that where the carrier delivers the goods to any one not lawfully entitled to the possession of them, it shall be liable to any one having a right of property or possession in the goods, if it delivers the goods otherwise than to the consignee named in a straight bill of lading for the goods (see clause (b) section 89), or "a person in possession of an order for the goods," etc. [See clause (c) section 89.] But in any event it shall be liable though it so deliver the goods after it had been requested by or on behalf of a person having a right of property or possession in the goods, not to make such delivery, or had information at the time of the delivery that it was to a person not lawfully entitled to their possession.

A, reading of the Federal Bill of Lading Act shows that it makes no effort to define ''a person lawfully entitled to the possession of the goods'' and ''a person having a right of property or possession in the goods,'' mentioned in sections 89 and 90. Therefore, who is such a person must be determined by other law and, whether we shall apply to the solution of the question the rules laid down by the Federal Courts or those enunciated by the courts of Missouri, or the terms of the uniform bill of lading act (and whether that act was intended to apply solely to intrastate shipments)', we are not called upon to decide, for the reason that the Federal Rule and the Missouri Rule in this respect is the same, that is, as before stated, that where the goods are sold upon condition, that condition must be performed by the purchaser before title to the goods passes, and that it is a perfect defense for the carrier to show that it has delivered the goods to the true owner or to the person entitled to their possession regardless of the bill of lading. [Nanson v. Jacob, 93 Mo. 331; Wolfe v. Mo. Pac. Ry. Co., 97 Mo. 473; Buschow Lbr. Co. v. Hines, 206 Mo. App. 681, 688; Hall-Robinson v. R. R. Co., supra; Frazier v. R. R. Co., supra; Johnson-Brinkman Co. v. R. R. Co., supra; Lewis v. McMahon, 307 Mo. 552, 565, 566; Amber v. Davis, 282 S. W. 459; Continental Natl. Bank v. Trust Co., 4 Fed. (2d) 219, 221; In re Taub, 7 Fed. (2d) 447, 450; McMahen & Son v. R. R., 16 Fed. (2d) 698, 699; Wall v. Express Co., 220 Mo. App. 898; Getchell v. Mo. Pac. R. R. Co., 110 Wash. 66; Bedig v. So. Pac. Co., 258 Pac. 148; Miller v. N. Y. C. R. R. Co., 200 N. Y. S. 287; 10 C. J., pp. 204, 261, 262.]

If the Missouri Bill of Lading Act has any application to an interstate shipment the provisions of sections 13562 and 13563 afford some evidence that the title to the lumber in question did not pass to plaintiff. These provisions, as well as all other of the provisions of the bill of lading act, should be read together. [See Amber v. Davis, supra, 1. c. 462.] Section 13563, Revised Statutes 1919, of

the uniform bill of lading act provides that if the draft and bill of lading are sent either directly to the buyer or through a bank, or other agency, unless a different intention on the part of the seller appears, the buyer or other parties interested shall be justified in assuming that if the draft was payable on demand (as were the drafts in the case at bar) "the seller intended to require payment of the draft before the buyer should be entitled to receive or obtain the bill." This is true where, under the terms of the bill, the goods are consigned to the buyer or his order. Paragraph (d) of section 13562 provides that if the seller draws on the buyer for the price and transmits the draft and bill together to the buyer to secure ·the acceptance or payment of the draft, the buyer is bound to return the bill if he does not honor the draft, and if he wrongfully retains the bill he acquires no added right.

Plaintiff herein makes mention of the fact that, in these shipments, the draft was not attached to the bill of lading. Our bill of lading act does not so require in order to give effect to its terms, but does say that if the draft and bill of lading are sent to the buyer it shall be presumed that the seller intended to require payment of the draft before the buyer should be entitled to receive or retain the bill, even though the buyer is the consignee. Here the bill of lading was sent directly to the consignee and the draft was presented to it through an agent of the seller, or the consignor, within two or three days after the bill of lading was received by the plaintiff. The evidence shows that plaintiff knew that the drafts would be forwarded in the amounts in which they came and that it had agreed to honor the same upon presentation. No rights of a third party holding the bill are involved herein and we see no difference between the act of the mill company in sending the bills of lading to the consignee and then having an agent present the drafts to the consignee for payment, than had it sent both the drafts and bills of lading direct to the consignee. Under the terms of the uniform bill of lading act, as adopted in this State, the manner in which the shipments were handled affords at least prima-facie evidence of the fact that title to the lumber was retained by the mill company until the drafts should be honored, and this without regard to the agreement between it and plaintiff that the drafts should be honored upon presentation.

Plaintiff could not obtain the right of property in or of the legal possession of the lumber by attempting to off-set the amount that it claimed was due it on account of defective lumber and shortages in other shipments. In the first place the evidence shows that these claims amounted to less than the amount owed by plaintiff to the mill company for the two cars of lumber in question. However that may be, a man cannot take property contrary to his obligations concerning the same and apply the value of it rightfully, even in ·order to discharge a just debt due him from the owner, for such

would be a dangerous and demoralizing way of collecting debts. [Smith v. Young, 109 N. C. 224, 227; Trego v. Lewis, 95 Pa. 463, 467. 468; Ditton v. Purcell, 36 L. R. A. (N. S.) 149, 153.]

There is no merit in the contention of plaintiff that defendant can make no defense to this action because it demanded the lumber of the mill company without proceeding under the terms of sections 97, 98 and 99 of the Federal Bill of Lading Act.

Section 97 provides:

"If more than one person claim the title or possession of goods, the carrier may require all known claimants to interplead, either as a defense to an action brought against him for non-delivery of the goods or as an original suit, which ever is appropriate."

Section 98 gives a reasonable time, under certain circumstances, to the carrier to ascertain the validity of adverse claims or to bring legal proceedings to compel all claimants to interplead.

Section 99 provides:

"Except as provided in the two preceding sections and in section 89 of this chapter, no right or title of a third person, unless enforced by legal process, shall be a defense to an action brought by the consignee of a straight bill or by the holder of an order bill against the carrier for failure to deliver the goods on demand."

It is quite apparent from a reading of sections 98 and 99 that they were enacted for the purpose of affording the carrier the time mentioned to protect itself against divers claims or persons and that the carrier can take advantage of these provisions if it sees fit but that it is not required to do so, except as provided by section 99; that unless it does so, or proceeds as provided in section 89, which latter section, by its terms refers to section 90, "No right of title of a third person, unless enforced by legal process, shall be a defense to an action brought by the consignee of a straight bill or by the holder of an order bill against the carrier for failure to deliver the goods on demand." It is plain that under the provisions of section 99, if the carrier proceeds as provided in section 89 it is not required to proceed under sections 97 and 98. In this instance the defendant proceeded under clause "a" of section 89 by recognizing the diversion order of the mill company, the "person lawfully entitled to the possession of the goods." In construing sections 89, 97, 98 and 99, the Supreme Court of Minnesota, in the case of Banik v. Chi. M. & St. P. Ry. Co., supra, l. c. 181, said:

"On reading these sections together it becomes quite clear that Congress intended to confer upon carriers, transporting goods in interstate commerce, the right to deliver the goods to the true owner, and to make such delivery a complete defense to an action by a shipper who holds an order bill of lading and who sues to recover damages for a failure to deliver the goods to him. The shipment here involved was an interstate shipment and the Federal act applies

rather than our own act (chapter 399, p. 573, Laws 1917), although it is practically the same.''

Plaintiff contends that the decision of this court in the former appeal in this case decided all of the questions raised in this appeal in its favor and is now *res adjudicata*. We think that the conclusion reached in the former appeal was proper under the facts considered by the court in disposing of the question as to whether plaintiff had the right of property in or of possession of the lumber. In the former appeal the sole matters considered by the court in determining that matter, although there are facts stated in the opinion tending to show that there was an understanding that the drafts were to be honored and that payment was refused, were that the bills of lading were straight bills of lading naming plaintiff as the consignee, and that the invoices used the word ''sold.'' From the authorities we have cited there is no question but that if we were to consider the bills of lading, only, in this appeal and not the drafts and the agreement with reference to the same, plaintiff would be entitled to recover in this suit. As before stated, in disposing of the case when it was here before only the two circumstances that we have mentioned were considered as the basis for the decision that the title to the goods passed to the plaintiff. From the conclusions we have reached in this appeal, the former appeal could not be held *res adjudicata* of the issues in this. [Holmes v. Loan Ass'n., 166 Mo. App. 719, 730, 731; Underwood v. City of Caruthersville, 197 Mo. App. 358, 364; Davidson v. R. R., 301 Mo. 79.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.