In re REEVES.

(District Court, N. D. New York. November 24, 1915.)

1. BANKRUPTCY ⏞140—TITLE—DELIVERIES FOR SALE UPON CONSIGNMENT.

    Under an agreement between W. and the bankrupt, W. was to furnish the bankrupt fountain pens "on consignment," at a discount from the list, with rebate privileges. The bankrupt was to sell at retail prices fixed by W. and make remittances each 90 days. He was to be responsible to W. for any and all loss from any cause whatever, and upon termination of the agreement by W. he was to make payment for all goods sold and not paid for, and return all unsold pens, together with showcases, signs, trays, etc., furnished by W. W. sent the bankrupt certain pens, together with trays, accompanied by an invoice reciting that the pens therein described were "sold" to the bankrupt. *Held* that, while the invoice imported an absolute sale, reading it in connection with the agreement, the pens were for sale on consignment, and the title to the pens and trays was in W.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ⏞140.]

2. BANKRUPTCY ⏞274½, New, vol. 4 Key-No. Series—TRUSTEE—LIABILITY FOR LOSS OF PROPERTY IN BANKRUPT'S POSSESSION.

    Where, upon demand, the trustee in bankruptcy refused to surrender pens in the bankrupt's possession at the time the petition in bankruptcy was filed, claiming they belonged to the estate, and some of them subsequently disappeared, the trustee and the estate in bankruptcy were liable to W. therefor, whether they were lost negligently, or without fault on the part of the trustee, since it was his duty to surrender them, and when he retained them he was not a gratuitous bailee, or a bailee for hire, but a tort-feasor, and, moreover, if he assumed the contractual relation of the bankrupt, the contract expressly made him liable for the value of pens lost and not returned.

3. BANKRUPTCY ⏞471—COSTS—DISCRETION OF REFEREE.

    In a proceeding to reclaim from the possession of a trustee in bankruptcy property belonging to the claimant, where the referee found for

---

⏞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the claimant, it was within his discretion to direct the trustee to pay the claimant $10 costs and disbursements in establishing his right and title.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 873–877; Dec. Dig. ⊚◄471.]

In Bankruptcy. In the matter of Charles E. Reeves, bankrupt. On review of an order of the referee directing the return to the claimant, Paul E. Wirt, by the trustee in bankruptcy, of certain property of the value of about $4, and the payment of the sum of $23.70, the value of certain other property in the possession of the bankrupt, and which came into the hands of the trustee with the property owned by said bankrupt. The referee also directed that the trustee pay the claimant $10 costs and disbursements in establishing his right and title. Order affirmed.

T. B. & L. M. Merchant, of Binghamton, N. Y., for claimant.
Vere H. Multer, of Binghamton, N. Y., for trustee.

RAY, District Judge. [1] Prior to the bankruptcy of Reeves and on August 13, 1912, he entered into a written agreement with Paul E. Wirt, the claimant, by which Wirt agreed to furnish Reeves an assortment of fountain pens "on consignment" at a discount of 40 per cent. from the list, with rebate privileges. Reeves was to sell the pens at regular retail prices fixed by Wirt and make remittance each 90 days. The contract fixed "rebates on consignment sales" from 3 to 12 per centum, depending on quantity sold, and these rebates were payable in fountain pens at wholesale prices January 1st each year. By express provision Reeves was to be responsible to Wirt for any and all loss from any cause whatever. The agreement could be terminated by Wirt at any time, and in such event Reeves was to "make payment for all goods sold and not paid for" (meaning, of course, that Reeves was to pay for such goods as he had sold and failed to remit for, less his rebate) and return all pens not sold, and also showcases, signs, trays, etc., furnished by Wirt. August 26, 1913, Wirt delivered to Reeves 48 pens, with certain trays, etc., accompanied by an invoice reading, so far as material, as follows:

"Paul E. Wirt. Fountain Pen Terms: Remit every 3 mos. for goods sold.
                                   "Bloomsburg, Pa., Aug. 26, 1912.
"Sold to Mr. Chas. E. Reeves, 61 Chenango St., Binghamton, N. Y.: [Here followed an itemized list of 48 pens, with prices.]"

The invoice in its terms and language plainly imparts an absolute sale of the pens, but read in connection with the agreement referred to it is plain that Reeves received and held the pens for sale on consignment, and that the trays, etc., belonged to Wirt; the title to the pens being in Wirt.

[2] At the time the petition in bankruptcy was filed Reeves had on hand, in addition to a specialty oak case, 18 of these pens, which went into the hands of the trustee in bankruptcy. These were demanded by Wirt, but the trustee claimed that they belonged to and formed a

part of the estate of the bankrupt, and he therefore refused to surrender them, and kept them in the place of business, where, by authority of the court, he was continuing the business of the bankrupt, and offered them for sale, and it is conceded sold 3 of them. When this reclamation proceeding was instituted and a hearing had the trustee conceded he had sold 3 of the pens and that he had but 2 remaining, and that the other 13 had disappeared. The value of the pens so sold and of those which disappeared is found to be $23.70, and the referee found that the trustee should pay over this sum and surrender and deliver to Wirt the pens on hand.

When or how or by what means these pens disappeared does not appear. It does appear that they belonged to Wirt, that it was the duty of the trustee to have surrendered them on demand and that he refused to do so, that the estate in bankruptcy had them, and that the trustee assumed ownership and dominion thereof. So far as Wirt, the claimant, is concerned, the estate in bankruptcy and the trustee in bankruptcy became accountable and liable to him therefor, as much as if Wirt had sold the trustee the pens to carry on the business. It was the appropriation by the trustee of the property of Wirt to the use of the bankrupt estate in carrying on the business. So far as Wirt, the claimant, is concerned, it is immaterial that the trustee negligently, or without fault on his part, lost the pens. When he retained the pens without right so to do, he, as trustee, became liable therefor. He was not a gratuitous bailee, or a bailee for hire, but a tort-feasor. If it be held he assumed the contractual relation and liability of Reeves, the bankrupt, then under the terms of the contract referred to he, as trustee, became liable to Wirt for the value of the pens lost and not returned, and so the contract expressly provides.

[3] The imposition of costs and disbursements, in view of the facts, was within the discretion of the referee.

Order affirmed.