BUSCHOW LUMBER COMPANY, Respondent, v. WALKER D. HINES, Director General, Appellant.

Kansas City Court of Appeals, March 7, 1921.

1. **CARRIERS**: Damages: Evidence Held Insufficient to Support Judgment Where Value of Lumber was not Shown. In an action to recover damages against railroad company for converting a car of lumber, it is *held*, that there was no evidence as to value of lumber alleged to have been converted, necessitating reversal of judgment and remanding of cause.

2. **COURTS**: Interstate Commerce: Shipment Governed by Federal Decisions. An action to recover damages for conversion of interstate shipment of lumber is governed by Federal decisions.

3. **CARRIERS**: Contracts: Provision in Contract Limiting Loss to Value of Property at Time and Place of Shipment is Void. A provisio in shipping contract that amount of loss for which carrier is liable shall be computed on basis of value of property at place and time of shipment is void because it would prevent a recovery of the full actual loss if it was enforced.

4. ————: Damages: Measure of Damages Reasonable Market Value of Property at Time and Place of Conversion. In an action against carrier committing alleged wrongful act and not against initial carrier for conversion of car of lumber after transportation ended, and consignee had redelivered lumber to be carried under another contract, it would make no difference whether shipment is an interstate one or not, since the measure of damages in either view is the reasonable market value of lumber at time and place of conversion.

5. **SALES: Title: Delivery Does not Per se Import an Acceptance or Sale.** In order to confer title there must be an acceptance of the property, and delivery does not *per se* import an acceptance or sale.

6. **CONVERSION: Title: Possession: Title to Property, or Right of Possession Necessary to Recovery.** Conversion cannot be maintained where plaintiff has neither the right of property in, nor the right of possesssion to, the chattels alleged to have been converted.

7. **CARRIERS: Conversion: Consignee Having Right of Possession May Sue for Damages for Conversion, Except as Against True Owner.** Where goods have been delivered to carrier to be transported to a consignee, the latter has the possession of the goods, and by virtue thereof, has the right to recover them or their value from any one who seizes them en route, except the true owner.

8. ———: ———: **Action by Consignee Cannot be Defeated by Carrier Showing Title in Another Without Connecting Itself with the Rights of Such Person.** In an action by consignee against carrier for conversion of car of lumber the carrier could not defeat the action by showing title in another without connecting itself with the rights of such person.

9. **APPEAL AND ERROR: In View of Unsatisfactory State of Testimony Cause Remanded so Evidence May be More Fully Developed.** In an action against carrier by consignee for conversion of car of lumber, sold according to directions of shipper, where consignee's right to possession of car was not clearly shown, and there was a mass of correspondence stricken out on defendant's objection, *held* that while consignee's recovery was not proper under the evidence, the cause should be remanded for another trial, where the evidence may be more fully developed.

Appeal from the Circuit Court of Jackson County.—
*Hon. O. A. Lucas*, Judge.

REVERSED AND REMANDED.

*John C. Grover* for respondent.

*Luther Burns, Sebree & Sebree* and *Mord M. Bogic* for appellant.

TRIMBLE, P. J.—Plaintiff brought this action against the Director General, in charge of the Chicago, Rock Island and Pacific Railway, to recover $822.68 the alleged value of a carload of lumber alleged to have been converted by the defendant at Atlantic, Iowa, after it had arrived at said destination. The answer, after admitting that defendant, as Director General, was in charge of said railway, contained a general denial. The cause was tried by the Court, a jury being waived. Plaintiff asked no instructions or declarations of law, and those asked by defendant were refused. Judgment in the full amount asked was rendered, and defendant has appealed.

Plaintiff, with headquarters in Kansas City, Missouri, was engaged in the business of buying and selling lumber in carload lots; it had no yards, its business being that of a lumber broker. Eliot Cobb, doing business as The Eliot Cobb Lumber Company, was a manufacturer of lumber, having his office at Meridian, Mississippi.

In completion of an order of plaintiff's, Cobb, on May 16, 1918, shipped a carload of lumber consigned to plaintiff at Coffeyville, Kansas. The terms of the sale were 80 per cent cash less 2 per cent discount (amounting to $400 which plaintiff paid), the balance to be due upon arrival of car at destination.

Plaintiff resold the car of lumber to the Green Bay Lumber Company at Atlantic, Iowa, and there being no through rate from Coffeyville to Atlantic, the plaintiff, in order to get the benefit of a combination rate, diverted, re-consigned or sent the car, over the Missouri Pacific Railroad on the original bill of lading, to the Quinn Lumber Company at Council Bluffs, Iowa, and directed the latter company, as plaintiff's agent, to pay the freight on the car and turn it over to the Rock Island Railroad to be carried to Atlantic and delivered to the Green Bay Lumber Company. This the Quinn Lumber Company did, taking up the original bill of lading and billing the car in its own name from Council Bluffs,

Iowa, to the Green Bay Lumber Company at Atlantic, Iowa, over the Rock Island. This new bill was issued June 7, 1918, and the car arrived at Atlantic, June 28, 1918. The Green Bay Lumber Company, having been notified of its arrival, started to unload the car, but after taking out one wagon-load put it back into the car and notified the agent it would not accept the lumber, as it was not of the grade purchased, being unevenly sawed and of varying thickness from one edge to the other and from one end to the other.

On the same day, June 28, 1918, the Green Bay Lumber Co. wrote plaintiff the situation and requested it to "have car moved at once" or have it inspected. Plaintiff wired the Green Bay Lumber Company to unload it with the understanding that they make proper allowance for anything not up to grade, and then on June 29, 1918, wrote Cobb of their customer's refusal to accept the car and also told him what they had done Cobb, on July 1, wired plaintiff *not to unload car but to return it to carrier,* and to advise him which road it was returned to. July 2, plaintiff wired and wrote Cobb that they had prevailed on customer to unload car so as to save demurrage, and, as the car could now be moved only on local rate Cobb "would have a bigger loss" than if he would let the Green Bay Lumber Company have it and make whatever allowance was right; but if he wanted the car reloaded, plaintiff would have customer put it back in car, Cobb to stand cost of loading and unloading. The letter to Cobb closed by saying, "In the event you decide to sell this material elsewhere we, of course, will have to insist on your loading out another car at once so that we can fill our order with customer. Kindly advise us at your earliest convenience how you wish this matter handled."

To plaintiff's telegram of July 2, Cobb on the same day replied by wire that "You had no right to order car unloaded until we were notified" as he, Cobb, could ship the lumber elsewhere as No. 2 lumber and make

money, and for plaintiff to wire immediately "amount of deduction you demand and we will advise, if excessive we will move the stock." On the same day Cobb followed this with a letter saying that he had wired to know what reduction was demanded on the shipment "and if this seems excessive we will simply move the car elsewhere which is our right," but that if, after learning the amount of deduction demanded, he decided to move the car, plaintiff was not entitled to charge him up with the expense of reloading as plaintiff's customer distinctly stated to plaintiff the lumber was not wanted.

On July 5, Cobb wired plaintiff that as plaintiff knew nothing personally about the stock and he, Cobb, could not find out anything about it from plaintiff, to have the car loaded "and turned back to the Rock Island. We are sending them shipping directions." To this plaintiff on same day wired Cobb it was having car reloaded and would "turn it back to the Rock Island," but that plaintiff expected Cobb to stand loading and unloading charges and also profit plaintiff had on car and for Cobb to "return advances" made on the shipment.

Thereafter certain correspondence by letter and telegraph ensued between plaintiff and Cobb, which was introduced by plaintiff, but which was objected to by defendant, and it was afterwards stricken out by the court.

The record discloses that the car reached Atlantic June 28, 1918, and the Green Bay Lumber Company took out one wagon-load and then put it back in car and refused to accept it on June 29th. Then, on instructions from its general office, the Green Bay Lumber Company accepted the car and began to unload and after taking out about 14,000 feet again put it back in the car and released the car to the railroad about July 11, 1918.

On July 5, 1918, Cobb directed the Rock Island Railroad that, upon the reloading of the car and the turning of same back to the carrier by the Green Bay

Lumber Company, it would re-consign same to the Sieppel Lumber Co. at Dubuque, Iowa, allowing all freight charges to follow the shipment. This the railroad did, without getting authority from plaintiff or the Green Bay Lumber Company, on the theory that Cobb was the owner and original shipper of the car at its initial shipping point.

There is one matter that necessitates a reversal of the judgment and a remanding of the cause even if all other points be decided in plaintiff's favor. And that is, there is no evidence whatever as to the value of the lumber defendant is alleged to have converted. Plaintiff says the price of the lumber shown in the invoice is some evidence of its value, and that McLean, Vice-President of the plaintiff company testified that he knew the market value of the lumber and that it was worth $822.68. But the trouble is that plaintiff claims, and its evidence shows, that the lumber was not grade No. 1, the kind that was purchased, nor even grade No. 2; and McLean, who never saw the lumber, says it was worth, at Atlantic, Iowa, $822.68 *if* it was grade No. 1. There is no evidence whatever that the quality and kind of lumber that was in the car was worth that much, nor what it was worth at Atlantic, Iowa or anywhere else for that matter. Hence the judgment cannot stand.

If the cause be remanded for a new trial, it is necessary to pass on some of the other points raised.

One of these is that the shipment was one in interstate commerce, the shipment being in reality from one State to another and that its interstate character is not changed by the mere fact of a new billing being made at Council Bluffs. Hence defendant says the case is governed by the Federal decisions, and that as there was a provision in the shipping contract that the amount of loss or damage for which the carrier is liable shall be computed on the basis of the value of the property "at the place and time of shipment," the value of the property at Atlantic, Iowa, its destination, is not the proper

basis. There is evidence, however, tending to show that the value of the lumber at Atlantic, Iowa, was greater than at the place of shipment, and hence, even if the case be an interstate one and governed by the Federal decisions, (as indeed it must be if it is), nevertheless, under the recent ruling of the United States Supreme Court, such provision in the shipping contract is void under such circumstances, since it would "prevent a recovery of the full actual loss if it is enforced." [Chicago etc. R. Co. v. McCaull-Dinsmore Co., 40 U. S. Sup. Court Rep. 504.] It is not seen, therefore, that it would make any difference whether the case is an interstate one or not, since the measure of damages in either view is the reasonable market value of the lumber at the time and place of the conversion. [Stringer v. Geiser Mfg. Co., 189 Mo. App. 337; Miller v. Biggs, 183 S. W. 713; Winchester v. Burris, 178 S. W. 286.] Especially would it seem to make no difference since the action is brought against the carrier that committed the alleged wrongful act and not against the initial carrier. Again, there was evidence tending to show, and from which the court could find, that the alleged conversion did not take place until after the transportation under the bill of lading had completely ended and after the shipment had been delivered to the consignee and was thereafter redelivered to the carrier. "Transportation of live stock begins with delivery to the carrier of the property to be loaded upon its cars, and ends only after the stock is unloaded and delivered, or offered to be delivered to the consignee." [Covington Stock Yards Co. v. Keith, 139 U. S. 128, 136; United States v. Union Stock Yards, 226 U. S. 286, 304.] There may be some difference in principle, however, between a shipment of that character and of the one in question; we do not say. But the cause of action is not founded upon any breach of the shipping contract under which the lumber was transported to Atlantic, or of any duty arising thereunder, but for an alleged wrong done after the transportation of

the lumber shipment had been completed and after the consignee had redelivered the lumber to be carried upon another contract. Inasmuch as it is not shown that any difference affecting defendant's liability has arisen because the case was not treated as one in interstate commerce, we are inclined to hold that it is not, and is therefore not governed by the Federal rules.

There may be a very grave question whether plaintiff has shown itself entitled to recover in conversion. Defendant strenuously contends that it is not so entitled. The plaintiff paid 80 per cent of the purchase price, less 2 per cent discount, the balance to be due "upon arrival of car at destination." This balance was never paid nor offered to be paid, and it is difficult to see where there is any evidence that plaintiff ever accepted the car. "Under all the authorities there must be an acceptance (in order to confer title), and delivery does not *per se* import an acceptance or sale." [Schermerhorn Bros. Co. v. Herald, 81 Mo. App. 461, 466; Fairbank Co. v. Illinois Central R. Co., 167 Mo. App. 286, 291; Ballard v First Nat'l. Bank, 195 S. W. 558; Bowen v. Zaccanti, 208 S. W. 277.] "Conversion cannot be maintained where plaintiff has neither the right of property in, nor the right of possession to, the chattels alleged to have been converted." [Parker v. Rodes, 79 Mo. 88, 91; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558, 567.] Which means, of course, that if a plaintiff has either the one or the other he can recover; and this is true, at least in many cases. Now, in the case at bar, the title was either in plaintiff or in Cobb, and if there was no acceptance, which it seems there was not, the title to the lumber remained in Cobb. So far as a right to the possession of the lumber is concerned, it must be remembered that, if title was in Cobb, then he was the *true owner* and the defendant's alleged act of conversion consisted in turning the lumber over to *him*. Where goods have been delivered to a carrier to be transported to a consignee the latter has the possession of the goods

and by virtue thereof has the right to recover them or their value from any one who seizes them en route *except* the *true owner*. [26 R. C. L. 1141.] At least defendant could not defeat the action by showing title in another without connecting itself with the right of such person. [Rosencranz v. Swofford Bros. etc. Co., 175 Mo. 518, 529.] It would seem that if the goods were turned over to the true owner, this would be as good as, or better than, connecting itself with the true owner. We do not say so, but it may be that plaintiff may have the right to refuse to accept the shipment as a completion of the purchase, and yet have a right to retain possession of the lumber in order to enforce therein its claim for the money already paid Cobb, and for the expenses incurred in unloading and reloading, if plaintiff was not to blame therefor. It appears, however, that plaintiff induced the Green Bay Lumber Company to unload the refused shipment without waiting to hear from Cobb as to what he wanted done in regard thereto, and hence, in that sense, plaintiff was to blame for the expense thereof and ought not to have the right to require Cobb to bear such expense; and as to the $400 plaintiff had paid Cobb, there is evidence, which is not denied or contradicted in any way, that Cobb, after getting possession of the lumber from the railroad sold it and credited plaintiff's account, for other sums due, with the $400 received from plaintiff on the car of lumber in question. If so, then it is hard to see how plaintiff would have a right to possession of the car for any purpose.

We are not willing to hold at this time, however, that plaintiff cannot maintain the suit, since there was a mass of correspondence between plaitiff and Cobb offered by plaintiff but stricken out on defendant's objection. Hence we prefer to let this question depend on another trial, where the evidence may be more fully developed and the law on the facts may be gone into more thoroughly.

206 M. A.—44

The judgment is, for the reason heretofore given, reversed and the cause remanded for a new trial. All concur.