TURNER LUMBER & INVESTMENT CO., RESPONDENT, v. CHICAGO, ROCK ISLAND & PACIFIC RY. CO., APPELLANT.*

Kansas City Court of Appeals.   April 1, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2557, p. 664, n. 93; Carriers, 10CJ, section 253, p. 195, n. 58; section 368, p. 256, n. 8; section 369, p. 257, n. 14; section 395, p. 276, n. 8; Evidence, 22CJ, section 87, p. 154, n. 6; New Trial, 46CJ, section 325, p. 326, n. 91.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts* and *Ilus M. Lee* for appellant.

*Goodwin Creason* for respondent.

ARNOLD, J.—This is an action to recover for the alleged conversion of two cars of lumber.

The facts shown are that plaintiff is a corporation engaged in the business of buying and selling lumber and building materials, having its executive offices at Kansas City, Missouri; that defendant is a corporation owning and operating a railway system, in part extending from Waveland, Arkansas, to Wister, Oklahoma, Kansas City, Missouri, and other points; that said railway company was and is engaged in interstate commerce in carrying freight for hire as a common carrier.

The petition is in two counts each covering one car of lumber and the facts are identical as to the two cars—the only difference being as to the dates of shipment and the damage sought on each. The prayer is for the recovery of $628.78 on one car and $812.58 on the other. The petition alleges that the Continental Mill Company, being the owner of timber and sawmills in the State of Arkansas and engaged in the manufacture of lumber, sold to plaintiff one car of lumber on June 29, 1925, and another on June 26, 1925, said cars to be shipped from Waveland, Arkansas, to plaintiff or its order at Wister, Oklahoma; that said two cars of lumber were delivered to defendant at Waveland, by the shipper, the first being loaded into a St. L. & S. F. car; that defendant accepted the shipment and issued its straight bills of lading, naming the shipper as consignor and plaintiff as consignee, and Wister, Oklahoma, as destination; that said bills of lading were delivered by the shipper to plaintiff and that thereafter plaintiff presented said bills of lading to defendant and directed the reconsignment of said cars to Kansas City, Missouri, but that defendant did not consign them as directed, but wrongfully converted them to its own use and reconsigned them to other persons at other points.

The answer was a general denial.

The parties entered into a stipulation as to some of the facts, but reserved the right to introduce evidence at the trial not inconsistent with the stipulation. The points covered by the stipulation are as follows:

"That lumber of the quality and description and amount alleged in the respective counts in the petition was loaded into Frisco and Rock Island cars at Waveland, Arkansas, by the shipper on defendant's tracks, and that defendant by order of the shipper executed on June 29th and 26th, respectively, bills of lading covering said cars; by which bills the cars were consigned to plaintiff at Wister, Oklahoma; that said cars were transported over defendant's road from Waveland, Arkansas, to Wister, Oklahoma; that the plaintiff ordered the lumber in question from the shipper at the solicitation of the latter; that the shipper drew a draft on plaintiff for a sum estimated to be eighty per cent of the invoice value of the lumber; that said draft was presented to plaintiff by a Kansas City bank, to which it had been sent by the shipper for collection; that said draft was dishonored by plaintiff and went to protest; that thereafter and after said cars had reached Wister, Oklahoma, the shipper, which was the consignor, notified defendant to divert said cars to a point other than that designated by the consignee, and that such diversion was made."

By agreement, the cause was tried to the court without a jury. There was a judgment and finding for defendant. On formal motion of plaintiff, duly filed, and sustained by the court for unassigned reasons, a new trial was granted and from this ruling, defendant has appealed.

Only two assignments of error are before us, viz., that the court erred in overruling defendant's demurrer to the evidence, and that the court erred in sustaining plaintiff's motion for a new trial. It is urged in support of the appeal that if there was no evidence which would entitle plaintiff to recover, the action of the trial court in granting a new trial was error, and two cases are cited in support of this position. Defendant asserts there is no evidence upon which plaintiff could recover, while plaintiff's position is to the contrary. The crucial point at issue is, had plaintiff acquired title to the two cars of lumber, and had it the right of possession thereto at the date of the alleged conversion?

As stated above the trial court assigned no ground for sustaining the motion for a new trial and under the rule applicable to this situation, we are not authorized to disturb the finding if any valid reason exists for the court's ruling. This rule is not disputed and citations are unnecessary. In support of the appeal defendant urges there was no evidence to entitle plaintiff to recover and that the trial court erred in granting a new trial; that the only possible claim plaintiff could make in support of the motion for a new trial is that the finding for defendant was against the weight of the evidence. Defendant expresses "doubt that the motion for new trial contains any such ground." But "for the sake of argument we waive the point and take the position that in any event the action of the trial court in

granting a new trial should be reversed for the reason that there was no evidence upon which plaintiff could recover.''

We think there is no doubt that the motion for a new trial, in the first paragraph, is broad enough to cover the point, where it is said that under the pleadings and all the evidence in the case, the findings and judgment of the court should have been for the plaintiff. And the same point is made in other paragraphs, in effect. It is agreed the shipment was interstate and that the case is governed by rules laid down by the Federal courts. [Wall v. Express Co., 272 S. W. 76; Mourer v. Railway, 280 S. W. 1050; Railroad v. Rankin, 241 U. S. 319; Railroad v. Beaham, 242 U. S. 148.]

The question determinative of this appeal is whether plaintiff had the right of possession at the time of the alleged conversion, and this involves the respective rights of the shipper and consignee; and the duty of defendant in respect thereto is governed by the terms of the Pomerene Act, 39 U. S. Stat. at L., p. 540, and particularly sections 9 and 10, U. S. C. A., title 49, sections 89 and 90. Section 89 provides as follows:

''The carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is

''(a) A person lawfully entitled to the possession of the goods, or

''(b) The consignee named in a straight bill for the goods, or

''(c) A person in possession of an order bill for the goods, etc., . . . .''

It is well settled by Federal decisions that a carrier is justified in delivering to the true owner or person entitled to possession regardless of the bill of lading, but delivery to a consignee in a bill of lading in the face of notice by the true owner, or one entitled to possession, renders the carrier liable to the owner or one entitled to possession. [Bank v. Trust Co., 4 Fed. (2d) l. c. 221; In re Taub, 7 Fed. (2d) l. c. 450; McMahen & Sons v. Railroad, 16 Fed. (2d) l. c. 699.] In Buschow Lumber Co. v. Hines, 206 Mo. App. 681, 229 S. W. 451, this court held:

''Where goods have been delivered to a carrier to be transported to a consignee the latter has the possession of the goods and by virtue thereof has the right to recover them or their value from any one who seizes them en route except the true owner.''

And in Wall v. Express Co.,ᵣ272 S. W., l. c. 78, the Federal statute was given the same construction as given by the Federal courts.

If, therefore, the Continental Mill Company was the owner of the lumber at the time of the alleged conversion, at which time it was still in the possession of defendant, it became the duty of defendant to divert same on order of the consignor. On the other hand, if under the law plaintiff was the owner and entitled to possession of the lumber in question at the time of the alleged conversion, the court did not err in sustaining plaintiff's motion for a new trial. As we

read the record the chief point in this respect is, Was the transaction between the Continental Mill Company and plaintiff a sale of the lumber? In considering this question we must look at the straight bill of lading issued herein and see what was its purport. Defendant concedes that the naming of a person consignee in a bill of lading is only prima-facie evidence of title or right to possession in that person; but this presumption can be overcome by proper evidence. The testimony tends to show the procedure in respect to such transactions was that prior thereto lumber was shipped by the consignor to the consignee at the solicitation of the consignor, and sold at various places; that the consignor would load and ship the lumber as agreed upon; that straight bills of lading were issued naming consignor and consignee; that these bills of lading, together with invoices were sent by the consignor to consignee and consignor would make and send to a Kansas City bank for collection drafts on plaintiff for eighty per cent of the invoices. The evidence shows plaintiff claimed shortages on some prior shipments so made and that the differences had not been adjusted at the time the shipments in question were made.

This procedure was followed in the instant case, and payment of the draft for $400 (approximately eighty per cent of the invoice price) was refused and the draft protested. Thereupon the consignor .ordered the diversion already mentioned. The invoices recited that certain described lumber was "sold to and shipped to plaintiff at Wister, Oklahoma." The evidence shows that by the agreement plaintiff was to sell the lumber and retain $1.50 per thousand for collection of the amount and remitting; that plaintiff was held responsible for the total value of the lumber so shipped; that when the lumber was sold by plaintiff, the customer paid plaintiff the purchase price therefor and plaintiff remitted the Continental Mill Company the said purchase price less $1.50 per thousand. It is also in evidence that when the purchaser objected to the quality or quantity of the lumber so sold and any adjustment was made, the Continental Mill Co. would stand the amount of the loss or adjustment. The two cars in issue here were received at destination, to-wit, Wister, Oklahoma, and while there the diversion was made at the request of the shipper after defendant had asked consignee for diversion order. After diversion of the two cars, plaintiff demanded of defendant payment therefor, and defendant answered that the cars had been diverted at the request of the shipper.

At the close of all the evidence, the court found:

". . . that under the evidence that the cars in question were sold by the plaintiff on consignment from the Continental Mill Company and that said two cars were not purchased outright."

The court then asked plaintiff, "Now, what have you to say about the law of diversion?" Thereupon plaintiff requested findings of

fact and declarations of law, both of which were refused. These were similar in form and referred to the respective cars; each asked a finding that the car in question became the property of plaintiff and subject only to its direction; that the car was diverted by defendant upon request of shipper without plaintiff's consent; and that such diversion constituted conversion of the lumber to defendant's own use; and each asked a finding of fact as to the value of the lumber, that defendant has failed and refused to pay plaintiff anything on account of the lumber, and that plaintiff is entitled to damages and interest from the demand date.

As above stated, an order granting a new trial will be sustained where the court fails to state the grounds for the order if any ground assigned in the motion is sufficient. [Lead & Zinc Co. v. Webster, 193 Mo. 351, 92 S. W. 79; Haag v. Cohen, 207 Mo. App. 36, 229 S. W. 296; Shoemaker v. Marcum, 9 S. W. (2d) 863.] We note paragraph 8 of the motion for a new trial is as follows:

"Because the court refused to find that the bills of lading introduced in evidence passed the absolute title of the lumber referred to in the pleadings from the Continental Mill Company to the plaintiff, especially after said bills of lading were delivered to the plaintiff, which *refused* of the court was error and to which ruling of the court the plaintiff at the time duly objected and excepted and still excepts."

Defendant admits that the straight bills of lading for the two shipments delivered by consignor to consignee were prima-facie evidence of ownership and right of possession in consignee, but insists that such prima-facie case may be rebutted by evidence showing that consignee had no title or right to possession; that where the facts are shown, the real agreement between the parties interested or claiming an interest, governs. In addition to the prima-facie case made by the bills of lading, there is the proof that the invoice used the word "sold." Of course this is not conclusive proof that the transaction was a sale, but it is evidence of a sale; the transaction may have been a bailment and not a sale as held in Piano Company v. Williams, 167 Mo. App. 515, 151 S. W. 211. It was held in In re Reeves, 227 Fed. 711, that an invoice which states the property sold in terms plainly imports an absolute sale, but by the terms of the original formal written agreement, there was a bailment intended. In the case at bar, however, not only the bills of lading but the invoices are substantial evidence of an outright sale. According to the stipulation the cars had reached their destination, to-wit, Wister, Oklahoma, before the alleged diversion. The price fixed by the invoice was f. o. b. Waveland, Arkansas.

This being an interstate shipment, the acts regulating interstate commerce control on questions covered by the act; but since these acts (sec. 8604a et seq., U. S. Comp. Stat., p. 1373 (1918), relating to bills of lading, including the 1916 amendment), do not undertake to

interpret contracts or define the rights of parties thereunder, then the contracts between the consignor and consignee should be construed by the Missouri law. Since no Arkansas law is pleaded, even if they are Arkansas contracts, the law of the forum controls, being the law of Missouri in the instant case.

In the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. Rep. 148, the court said, quoting from Railway Co. v. Solan, 169 U. S. 133, 137, referring to State laws:

''They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of the persons and corporations within its limits.''

See similar ruling by our Supreme Court in Woolridge v. Bryan, 270 S. W. 658, 660. In the Croninger case, supra, it is said:

''While under these provisions it may be said that Congress has made it obligatory to provide proper facilities for interstate carriers of freight, and has prevented carriers from obstructing continuous shipments on interstate lines, we look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and, until Congress shall legislate upon it, is there any valid obligation to the State enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage?''

Section 13562, Revised Statutes 1919, provides the manner in which the consignor may retain his ownership in the property shipped. The section reads:

''Where goods are shipped by the consignor in accordance with a contract or order for their purchase, the form in which the bill is taken by the consignor shall indicate the transfer or retention of the property or right to the possession of the goods as follows:

''a. Where by the bill the goods are deliverable to the buyer or his agent, or to the order of the buyer or of his agent, the consignor thereby transfers the property in the goods to the buyer.

''b. Where by the bill the goods are deliverable to the seller or to his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract.

''c. Where by the bill the goods are deliverable to the order of the buyer or of his agent, but possession of the bill is retained by the

seller or his agent, the seller thereby reserves a right to the possession of the goods, as against the buyer.

"d. Where the seller draws on the buyer for the price and transmits the draft and bill together to the buyer to secure acceptance or payment of the draft, the buyer is bound to return the bill if he does not honor the draft, and if he wrongfully retains the bill he acquires no added right thereby."

We think paragraph a, in the above-quoted section is conclusive under the facts here presented. In Scharff v. Meyer, 133 Mo. 428, 445, it is said:

"If, under such circumstances, the consignor wishes to prevent the title from vesting in the consignee, he must, by bill of lading, make the goods deliverable to his own order."

And on p. 446, it is said:

"If the bill of lading shows that the consignment was made 'for the benefit of the consignor or his order, it is very strong proof of his intention to reserve the *jus disponendi*. And on the other hand, if the bill of lading shows that the shipment is made for the benefit of the consignee, it is almost decisive of the consignor's intention to part with the ownership of the property."

The general rule is stated in 35 Cyc. 321:

"A bill of lading or shipping receipt is regarded as symbolical of the goods, so that a transfer and delivery of the document is sufficient to pass the property in the goods, provided the delivery of the bill of lading is unconditional, is made by one rightfully in possession thereof, and is not intended as a mere pledge."

We think plaintiff's position is conclusively supported by sections 8604i, 8604ii and 8604j, 39 U. S. Stat. at L. 541; U. S. Comp. Stat. 1918, p. 1375. Section 8604j, is as follows:

"Enforcement of claim of third person to goods. Except as provided in the two preceding sections and in section nine, no right or title of a third person, unless enforced by legal process, shall be a defense to an action brought by the consignee of a straight bill or by the holder of an order bill against the carrier for failure to deliver the goods on demand."

It is shown defendant herein did not require the consignor and consignee to interplead, nor follow the requirements of either of the preceding sections. In applying the law to the facts herein, we are of opinion that the trial court did not err in sustaining plaintiff's motion for a new trial. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.