JOSIAH BAKER et al., Respondents, v. ST. LOUIS &
SAN FRANCISCO RAILROAD COMPANY, Ap-
pellant.

Kansas City Court of Appeals, May 9, 1910.

1. COMMON CARRIERS: Breach of Duty to Furnish Means of
Transportation: Form of Action. Where an intending shipper
gives reasonable notice to a common carrier that such shipper
will tender cattle for shipment at a certain time, and the car-
rier promises to have the necessary cars on hand at such time,
but fails to do so, plaintiff is not required to sue for the breach
of an oral contract, but may sue for the breach of a com-
mon law duty to furnish said cars.

2. ———: ———: ———. The duty in such case is not created
by the promise of the carrier to provide the means of transpor-
tation, but arises from the offer by the shipper of his proper-
ty and his request that the cars be furnished at a reasonable
time.

3. ———: ———: ———: Evidence of Negligence. A delay of
a month in furnishing cars furnishes some evidence that
defendant's delay was unreasonable. And the agreement of
defendant's agent to have the cars ready at the time requested
justified the conclusion that plaintiff's request for such cars at
such time was not an unreasonable request.

4. ———: ———: Failure to Furnish Transportation Excused by
Increase of Business, When. While a carrier is not liable for
delays caused by a sudden increase of business that could not
be reasonably anticipated, it must nevertheless prepare for
such contingencies as are to be reasonably expected; and
where a change of conditions promises an increase of business,
the carrier must make reasonable effort to meet the increased
demand for means of transportation. Common carriers are
public servants and, at their peril, must equip themselves to
take care of normal traffic with reasonable efficiency and dis-
patch.

5. CONTRACTS: Damages Under Oral Contract Waived by Writ-
ten Contract, When. Where damages have accrued under a
verbal contract, and the subject-matter of such oral contract
becomes the subject-matter of a subsequent written agreement,
such damages are waived or not waived according to whether
or not the intention evidenced by the parties in such written
contract is to have such written contract cover all of their
rights with reference to such subject-matter.

6. ————: ————: ————: **Application of Rule.** The shipping contracts in this case purported to contain a waiver of all of plaintiff's right to damages under "any written or verbal contract, prior to the execution hereof concerning said stock, or any of them." The cause of action herein sued on being wholly independent of any contractual relation, said provisions has no application thereto.

7. **PRACTICE: Demurrer to Evidence.** In passing on the questions raised by the demurrer to the evidence in this case, the evidence will be regarded in its aspect most favorable to the plaintiffs.

Appeal from Johnson Circuit Court.—*Hon. Nick M. Bradley,* Judge.

AFFIRMED.

*John H. Lucas* and *J. W. Suddath & Son* for appellant.

(1) A railway company is not bound to be ready for a wholly unprecedented and unforeseeable increase of traffic. Pruitt v. Railway, 62 Mo. 527; Meriwether v. Railroad, 128 Mo. App. 647. (2) If damages accrue upon a verbal contract and a written agreement covering the same shipment waives the previous loss, thereby evincing an intention to cover the whole, in the writing, no action can be maintained for such loss under the verbal contract. Hoover v. Railroad, 113 Mo. App. 688; Fountain v. Railroad, 114 Mo. App. 676; Boggs v. Steam Laundry, 171 Mo. 282; Miller v. Railroad, 62 Mo. App. 252; Meriwether v. Railroad, 128 Mo. App. 647; Luckey v. Railroad, 133 Mo. App. 589.

*Bruce Barnett, E. B. Silvers* and *O. L. Houts* for respondent.

(1) The common law duty of a common carrier to furnish facilities and transport freight is not concontractual. Com. Co. v. Railroad, 98 Mo. App. 213. (2) This is illustrated by the fact that where

action is based on a contract to furnish cars, and the evidence only shows and order for cars, and consequently only a common law liability to furnish them, the action must fail, for plaintiff has pleaded a contract and proved a tort. Railroad v. Canning, 110 S. W. 965. (3) The contracts of carriers are construed most strongly against the carrier, being made for his protection. 5 Am. and Eng. Ency. Law (2 Ed.), 335. (4) And no exemption not expressly within the terms of the contract is allowed to the carrier. Richardson v. Railroad, 149 Mo. 311; Harrison Bros. v. Iron Works Co., 96 Mo. App. 357.

JOHNSON, J.—Plaintiffs shipped 581 head of neat cattle over defendant's railroad from Tuttle, Oklahoma, to the market at Kansas City. They do not claim there was any delay in the transportation but plead as their cause of action the unreasonable and negligent delay of defendant in furnishing cars for the shipment. A trial before a jury resulted in a verdict and judgment for plaintiffs in the sum of five thousand dollars, and the cause is here on appeal of defendant.

In 1905, plaintiffs were operating a cattle ranch some ten miles from Tuttle and, in October of that year, decided to ship 581 head of fat cattle to market. Accordingly, on October 5th or 6th, plaintiff, Josiah Baker, who had an office at the stockyards in Kansas City, told the live stock agent of the defendant stationed there that plaintiffs expected to ship cattle from Tuttle on the 12th or 15th of October and would need twenty-five cars. The agent replied, "All right," and Mr. Baker went to Tuttle on October 12th to attend to the shipment. On the 13th he called on defendant's station agent at Tuttle and told him that plaintiffs, on the following day, would cut out the cattle to be shipped and bring them to Tuttle, and requested the agent to have twelve cars ready for loading on the 15th of the month and

thirteen cars two days later. The agent replied, "All right," and asked at what hour plaintiffs desired the engine to be there to help in the loading. Mr. Baker answered, "Seven o'clock in the morning of the 15th."

According to the evidence of plaintiffs, no objection to furnishing the cars on the dates stated was offered by the agents, nor was any suggestion made that the cars might not be provided on account of a car famine or for any other reason. On the contrary, plaintiffs assured by the statements and actions of the agents that the cars would be provided in compliance with the order, cut out the cattle and drove them to Tuttle. The cars did not arrive until twenty-seven days had expired. Then the cattle were shipped to Kansas City where part of them were sold. The remainder were forwarded to Chicago and sold at that market. During the long wait for the cars, plaintiffs were compelled to pasture the cattle on strange pastures near Tuttle. Their own pastures were exhausted and those into which the cattle were turned were in poor condition. Added to this were unfavorable weather conditions and from these causes the cattle fared so badly they shrank in weight and became stale in appearance. The market steadily declined during the delay. No claim is made that plaintiffs were not damaged or that the verdict was excessive. The petition skillfully avoids basing the cause of action on an oral contract to provide cars, but charges defendant with a breach of its common law duty as a common carrier to provide cars to shipper on reasonable notice. The gist of the action pleaded appears in the following quotation from the petition:

"Plaintiffs state that the notice given by them to the defendant company, as aforesaid, upon the thirteenth day of October, 1905, of their desire to ship said cattle from said Tuttle, Indian Territory, to said Kansas City, Missouri, on the said fifteenth and seventeenth days of October, 1905, was a reasonable and sufficient notice and gave the defendant company, its agents, ser-

vants and employees reasonable and sufficient time to furnish and provide cars and facilities and to ship, transport and carry the said cattle upon the said fifteenth and seventeenth days of October, 1905; that the aforesaid delay of the defendant company, its said agents, servants and employees, in providing said cars and in shipping, transporting and carrying said cattle as aforesaid, was an unreasonble delay and was due to carelessness and negligence upon the part of the defendant company, its said agents, servants and employees."

The answer of defendant in addition to a general traverse interposes a number of special defenses based on the stipulations in shipping contracts which it is alleged by defendant and conceded by plaintiffs were signed by the parties just before the shipments left Tuttle. These contracts, twelve in number, are alike. Each begins with a "notice" that "this company has two rates on live stock . . . fixed in view of the nature and extent of liability assumed by the carrier, and all kinds of live stock shipped in car loads under a contract similar to the following, limiting the liability of the carrier, are taken at reduced rates. All kinds of live stock will be taken at the carrier's risk if the shipper so elects at rates provided by the existing tariffs," etc. The notice is followed by the application of the shipper in which he states: "This application is an election on my part to avail myself of a reduced rate, by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations." Then follows the contract which contains a number of limitations of defendant's common law liability, all based on the consideration of a reduced rate. Among such stipulations is the following:

"For the consideration aforesaid the shipper agrees to waive and release and does hereby release the company from any and all liability for or on account of de-

lay in shipping said stock after the delivery thereof to its agent, and from any delay in receiving the same after tender of delivery, and for breach of any alleged contract to furnish cars at any particular time, and the shipper hereby releases and does waive and bar any and all causes of action for any damage whatsoever, that has accrued to the shipper, by any written or verbal contract prior to the execution hereon concerning said stock or any of them."

Another paragraph provides "That, as a condition precedent to a recovery for any damages for delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or the nearest station agent of the party of the first part, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated; and that a failure to comply with the provisions of this clause shall be a bar to the recovery of any and all such claims."

The evidence introduced by defendant tended to show that the schedules, tariff sheets, etc., showing the existence of the two rates mentioned in the contracts were on file and posted at the station at Tuttle in compliance wih the requirements of the Interstate Commerce Act; that a car famine delayed defendant in the furnishing of cars; that the agent instead of promising the cars as stated by plaintiffs, told them of the car famine and its probable consequences, and that cars were provided in a reasonable time considering all thé circumstances of the situation.

Defendant contends that its demurrer to the evidence should have been sustained. In passing on the questions raised by the demurrer, we shall regard the

evidence in its aspect most favorable to plaintiffs, and in so doing, we assume that when plaintiffs ordered the cars on October 13th, nothing was said by defendant about a car famine nor was it intimated that the time allowed was unreasonable or that for any reason the order would not be filled.

In its brief, defendant takes the position that "The action in this case was not founded upon contract, neither verbal nor written. It is bottomed upon the common law duty of defendant, as a common carrier, to furnish cars to the plaintiffs on whatever day ordered, providing said notice is given a reasonable length of time before the date fixed." We regard this position as well taken. The nature of the cause of action pleaded is *ex delicto*, not *ex contractu*. The common law duty of the defendant as a common carrier compelled it to furnish cars for the transportation of live stock on a reasonable demand of the shipper. The duty in such cases is not created by the agreement or promise of the carrier to provide the transportation, but arises from the offer by the shipper of his property and his request that cars be furnished at a reasonable time. Plaintiffs could have pleaded a cause of action based on the oral promise of defendant's agents to furnish the cars on the dates fixed in the order, but they elected to sue as for a breach of the common law duty and this they could do with or without the existence of a contract by defendant to provide the cars. [Creamery Co. v. Railroad, 128 Mo. App. 420.]

First it is argued by defendant that there is no evidence on which to found a reasonable inference that the delay was negligent or unreasonable. To sustain this contention, defendant must exclude from consideration the delay following the dates for which the cars were ordered, since it is too plain for discussion that a delay of a month in furnishing stock cars would constitute some evidence of the fact that the delay was unreasonable. As a reason for thus ignoring the major

part of the delay, attention is called to the petition which alleges "that the aforesaid delay of the defendant company (referring to the failure to furnish the cars on the 15th and 17th days of October) in providing said cars was an unreasonable delay and was due to carelessness and negligence" and the rule is invoked that "where a specific act of negligence is alleged the plaintiff must recover on the act pleaded or not at all." [O'Brien v. Western Steel Co., 100 Mo. 182; McCarty v. Hotel Co., 144 Mo. 397; Waldhier v. Railroad, 71 Mo. 514; Chitty v. Railway, 148 Mo. 64.] Counsel then argue: "No length of delay after October 15th and 17th, the days set for the delivery, constitute any cause of action or give any right of recovery under the petition. And the evidence of delay after this date was only competent and was admitted only for the purpose of proving the measure of damages, or in aggravation of damages."

The argument is more ingenuous than sound and it crumbles to nothing before the inference, abundantly supported by evidence that the order for the cars allotted defendant a reasonable time in which to provide them. The failure of defendant's agents to complain of the time given and their ready acceptance of the order coupled with the expressed assurance that it would be filled, are facts which justify the conclusion that the time was reasonable. Another answer to the argument suggests itself but the one given is sufficient.

Further, it is argued by defendant that it should be excused from liability on the ground that the delay was caused by a sudden influx of business that overtaxed its capacity. It is well-settled that a carrier is not liable for delays caused by a sudden increase of business that "could not be anticipated by ordinary prudence and foresight." Railroad companies are not required to perform impossible things, or to guard against extraordinary conditions. [Russell Grain Co. v. Railway, 114 Mo. App. 488.] But we think the evidence of defendant fails to disclose the existence of an abnormal

condition during the autumn of 1905. There was a large increase of business and defendant suffered from a car famine, but these conditions admittedly were the result of two causes, *viz.*, an extension of defendant's mileage and the natural increase of business in the territory covered by its system. It was defendants duty to provide for such a situation. A common carrier cannot excuse its failure to meet natural and normal traffic conditions by saying that it failed to anticipate them or provide against them. That would be merely offering its own nonfeasance as an excuse for the injurious consequences thereof. Common carriers are public servants and, at their peril, must equip themselves to take care of normal traffic with reasonable efficiency and dispatch.

Next, it is argued by defendant that the cause of action sought to be enforced by plaintiffs was released by the express terms of the written contracts of affreightment. Counsel say in their brief: "If damages accrue upon a verbal contract and a written agreement covering the same shipment waives the previous loss, thereby evincing an intention to cover the whole in writing, no action can be maintained for loss under the verbal contract." Citing Hoover v. Railway, 113 Mo. App. 688; Fountain v. Railway, 114 Mo. App. 676; Boggs v. Steam Laundry, 171 Mo. 282; Miller v. Railway, 62 Mo. App. 252; Meriweather v. Railroad, 128 Mo. App. 647; Luckey v. Railroad, 133 Mo. App. 589. The rule thus is stated by ELLISON, J., in Hoover v. Railroad: "If damages have accrued under a verbal contract and there is no waiver or disclaimer of such breach in the subsequent writing, an action may be maintained on the verbal agreement, notwithstanding there was a subsequent writing. But if the subsequent agreement contains among its stipulations that any breach of the verbal contract relating to the shipments is waived, thereby evincing an intention on the part of the contracting parties to regard the writing as cov-

ering the whole shipment and determining their rights arising by reason of such shipment, no action can be maintained on the verbal agreement."

This rule, however, has no application to the present case for the reason, as we have shown, that it is based not on the breach of an oral contract but on the breach of defendant's common law duty to provide cars, and the written contracts entered into by the parties after the cause of the action accrued do not, in express terms, or even by implication, attempt to release such causes. The shipper stipulated to release "any and all causes of action for any damage whatsoever that has accrued to the shipper, by any written or verbal contract, prior to the execution hereof concerning said stock or any of them." Obviously, that stipulation cannot be made to apply to a cause of action such as the present which does not include among its constituent elements any oral contract or agreement of the carrier, but is wholly independent of any contractual relation. We may concede for argument that the shipping contracts were valid and binding on the plaintiffs in all their respective stipulations, but we hold them to be entirely foreign to the cause of action under consideration.

Finding no substantial error in the record, the judgment is affirmed.