A. F. WILLIAMS, Respondent, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.*

In the Springfield Court of Appeals, July 1, 1925.

1. **CARRIERS:** Interstate Shipments: Railroads: Furnishing Cars. Under the law pertaining to car service for interstate shipments, a railroad cannot make a valid agreement to furnish cars, in view of Interstate Commerce Act as amended February 28, 1920 (U. S. Comp. St., 1923, Supplement, sec. 8563 *et seq.*)

2. ——: ——: ——: ——. In view of Interstate Commerce Act, as amended February 28, 1920 (U. S. Comp. St., 1923 Supplement, sec. 8563 *et seq.*), a cause of action cannot arise from a breach of contract, oral or written, to furnish cars for shipment of livestock in interstate commerce.

3. ———: ———: ———: ———. When tariff rule No. 2798, as to ordering of cars by shipper, has been complied with, and carrier fails to furnish cars as ordered within a reasonable time, it is liable to shipper for breach of duty created by law, and not for breach of contract.

4. ———: Failure to Furnish Cars: Instruction Permitting Recovery Held Erroneous. In suit by shipper of live stock for railroad's breach of duty to furnish cars contracted for interstate shipment, instruction permitting recovery for railroad's breach of contract was erroneous.

5. ———: Interstate Shipments: Railroads: Failure to Furnish Cars: Measure of Damages Stated. The measure of damages resulting from unreasonable delay in furnishing stock cars is the difference in the market price at the place of destination when the shipment should have arrived and when it did arrive, plus a reasonable expense incurred because of the delay.

*Headnotes 1. Carriers, 10 C. J., Section 290; 2. Carriers, 10 C. J., Section 293 (Anno); 3. Carriers, 10 C. J., Section 66; 4. Carriers, 10 C. J., Sections 66, 293 (Anno); 5. Carriers, 10 C. J., Section 76 (Anno).

Appeal from the Circuit Court of Texas County.—*Hon. W. E. Barton,* Judge.

AFFIRMED IN PART, REVERSED IN PART, AND WHOLE CAUSE REMANDED.

*W. F. Evans,* of St. Louis, *W. J. Orr,* of Springfield, *Lamar & Lamar,* of Houston, and *L. T. McGee,* of Salem, for appellant.

(1) There was an entire failure of proof of these allegations of the first count of the petition (a) that the plaintiff on October 20, 1922, placed an order for four cars for October 21, 1922; (b) that defendant agreed to furnish four cars for October 21, 1922; (c) that there was a difference between the market price of such cattle on October 22 and November 20, as alleged; (d) October 22, was Sunday and there was no market, and the cattle were not sold on November 20, but on November 22, 1922;

(e) plaintiff did not keep the cattle ready for shipment as alleged from October 21 until November 20, but drove his cattle to Ellington on November 16; (f) he did not, therefore, have the cattle on pasture an alleged from October 21 to November 20. This proposition is too well settled to call for cases. (2) For the reasons above enumerated the motion for a directed verdict on the first count should have been sustained. (3) Instruction No. 1 given on behalf of the plaintiff was erroneous (a) because it did not require the jury to find that there was an agreement to furnish the cars on the date alleged or at all; (b) it is in direct conflict with instruction A given at the defendant's request—one in effect tells the jury that the notice given on the 20th for a car to be placed on the 21st is a reasonable notice, while the other says it is not; (c) it leaves the jury to determine questions of law; (d) it is not based on the evidence; (e) it ignores undisputed testimony; (f) it furnishes no guide to the jury on the question of liability; (g) it directs a verdict on the facts therein hypothecated, and (h) it is not based on the petition. (4) Instruction No. 2 given at the plaintiff's request is erroneous (a) because it does not furnish the jury any legal guide as to the correct measure of damages; (b) it is not based on the pleadings or the evidence; (c) it directs a verdict on the facts therein hypothecated and allows the jury no discretion or judgment on those facts; (d) it is abstractly and concretely erroneous and prejudicial. (5) Instruction No. 3 given on behalf of the plaintiff is erroneous and prejudicial in that (a) it is not based on the pleadings or the proofs; (b) it directs a verdict for the plaintiff on the facts therein hypothecated; (c) it ignores the undisputed and material testimony in the case; (d) it is not a correct statement of the law and the facts it submits. (6) Instruction No. 4 given at the plaintiff's request is erroneous (a) because it does not furnish the jury any legal guide as to the correct measure of damages, (b) it is not based on the pleadings or the

evidence; (c) it directs a verdict on the facts therein hypothecated and allows the jury no discretion or judgment on those facts; (d) it is abstractly and concretely erroneous and prejudicial. (7) The instructions 1, 2, 3 and 4 given on behalf of the plaintiff ignore the allegations of the petition that the defendant agreed to furnish the cars sued for, and the jury was not required by any instruction to find that this allegation was sustained (8) A station agent is without authority to make any special agreements as to furnishing cars. The law fixes the conditions upon which cars must be furnished and prohibits any discrimination. Interstate Commerce Act 1920, sec. 3; Underwood v. Hines, 222 S. W. 1037, and cases cited.

J. D. Wallace, of Alton, for respondent.

The proof showed that there was a decline in the market between October the 23rd, the first market day these cattle could have reached the market if cars had been furnished when ordered, or within a reasonable time, and November 20th, the date they did reach the market. Also see Mr. Orr's admission that, "we did order four cars on October 20th, and that they were never furnished," and that Mr. Williams drove his cattle to Ellington, and shipped them to St. Louis. See also, C. H. Rinehart's testimony that there was a decline between October 24th, and November 20th, from $1 to $1.25 on steers. Plaintiff did keep the cattle ready for shipment at all times until November 16th, when he was compelled to drive those cattle a long distance to Ellington, Missouri, in order to obtain cars and he did have them on feed and pasture at all times from October 20th, until November 20th, as testified to by Mr. Williams, and most all the other witnesses. Under the second count of plaintiff's petition, the evidence showed that plaintiff contracted to sell those cattle in August to C. O. Wilson of Marshall, Missouri, the cattle not to be received or

paid for, until delivered F. O. B. cars at Winona, Missouri, Mr. Wilson was down there, and verbally contracted to buy those cattle in August. And Mr. Williams was compelled to, and did expend the sum of $258 for pasture from September 2d, until the 17th of October, when he did ship the cattle. This bunch of cattle was contracted for, at so much per head, and Mr. Williams would have received just as much for those cattle on the first or second day of September as he did receive on the second day of October, the date of last shipment, and the $258 expended for pasture and labor in caring for those cattle one and one-half months was a clear loss to him. Instruction number 1, given for plaintiff properly declares the law as section 9925, article 2, Revised Statutes of Missouri, 1919, makes it the duty of all corporations or private companies owning or operating a railroad in this State are required to furnish to shippers of live stock, suitable and convenient stock cars without unreasonable delay; and is is not necessary that the company agree to furnish cars to them, although in this case they did agree to furnish them. See G. M. Davis's evidence in which Mr. Woodall, agent for the Frisco Railway Company, stated "that Mr. Williams could get the cars." A carrier is liable for damages for failure to furnish cars in accordance with a verbal contract. Harrison v. Railway, 74 Mo. 364; Gann v. Railway, 72 Mo. App. 34; 10 C. J., page 72, par. 66; Cronan v. Railway, 149 Mo. App. 384. Instruction numbered 2, given for plaintiff, properly declared the law as this instruction told the jury—they should take into consideration the market price of the cattle on November 20th, the date they arrived at market, and the market price at the time they should have arrived at the National Stock Yards, Illinois, if there had been no failure to furnish cars at the time ordered or within a reasonable time when ordered, and that the jury in estimating plaintiff's damage is entitled to consider the amount of money plaintiff actually expended for feed, pasture and labor in driving

said cattle to water during the period of time he was waiting on defendant to furnish cars after a reasonable length of time. 10 Corpus Juris, page 77, par. 76, and page 361, par. 446; Ry. Co. v. Smith, 34 Tex. Civ. App. 571; 10 Corpus Juris, page 313, par. 451, Live Stock, Footnote b; St. Louis Ry. Co. v. Ozier, 86 Ark. 179, 110 S. W. 593; Wilson & Aull v. Mo. P. Ry., 66 Mo. App. 388; Gann v. C. G. & W. Ry., 72 Mo. App 40. Instruction number 3 given on behalf of the plaintiff properly declared the law as this instruction which was supported by the evidence told the jury that if they found that A. F. Williams notified the agent of the defendant that on the second day of September, 1922, that he would have one hundred and thirty head of cattle that he had sold to C. O. Wilson, F. O. B. the defendant's cars at Winona, to be carried by defendant to Marshall, Missouri and if they found that the defendant had failed to furnish the cars within a reasonable time of September 2d, and did not furnish them until October 13, 1922, and during all that period of time the cattle were ready shipment, and that he expended money in feeding, caring for and pasturing the cattle, he is entitled to recover in a sum not exceeding the $258. Ry. Co. v. Smith, 34 Tex. Civ. App. 571, 79 S. W. 614; 10 C. J. page 77, par. 76. Instruction number 4, given on behalf of the plaintiff was the proper measure of damages as the evidence showed that those cattle were sold at so much per head, and were to be delivered F. O. B. cars at Winona, Missouri, September 1st, or within a reasonable time of September 1st, the cars were not furnished until October 17th, date of last shipment, and he was compelled to, and did expend the sum of $258 in pasture and caring for said cattle. Instruction number A, offered by defendant and refused by the court was properly refused as this instruction requested the jury to find the difference between the market value of the cattle at Winona, Missouri, and the National Stock Yards, Illinois, the same date. Those cattle were intended for shipment to the National Stock Yards, Illinois, and

there was no market for said cattle at Winona, Missouri. Wilson & Aull v. Mo. P. Ry., 66 Mo. App. 388; Gann v. C. G. & W. Ry. 72 Mo. App. 40.

BRADLEY, J.—Plaintiff sued into two counts to recover damages alleged to have been caused by the failure to furnish cars. The cause was filed in Shannon county, but went on change of venue to Texas county where trial was had before the court and a jury, resulting in a verdict and judgment on both counts in favor of plaintiff. Failing to get a new trial defendant appealed.

At the last term we handed down an opinion in this cause, but granted a rehearing. The first count is based on an alleged failure to furnish cars for interstate shipments and the second count is based on an alleged failure to furnish cars for intrastate shipments. On oral argument at the last submission counsel for defendant conceded that there is no error of sufficient consequence to justify a disturbance of the judgment on the second count, hence this opinion concerns the first count only.

After some preliminary allegations plaintiff alleges: "That on or about the 20th day of October, 1922, the plaintiff notified the defendant at the said station of Winona that on the 21st day of October, 1922, he would have at said station of Winona four carloads of cattle to be carried by the defendant from said station of Winona, Missouri, to St. Louis, Missouri and to the National Stock Yards, Illinois, and to be then and there placed on the market for sale; that the defendant promised and agreed with the plaintiff that on said 21st day of October, 1922, the defendant would have and provide at said station of Winona, four cattle cars for the transportation of said cattle to St. Louis, Missouri, and thence to the National Stock Yards, Illinois, on its local freight train scheduled to leave said station of Winona, Missouri, at—hour, or about said hour. That in pursuance of said agreement and understanding he drove his said one hun-

dred and fifty-five head in number and sufficient to fill four cars near to the said station of Winona, and had them ready and in time on said date to be loaded for shipment on said date and train, but that the defendant failed to provide the said cars for the transportation of said cattle on said date, and although requested by the plaintiff to provide the said cars on the 20th day of October, 1922, and on every other day from and after the 20th day of October, 1922, until the 20th day of November, 1922, the defendant utterly failed and refused to provide the said cars for the transportation of said cattle on said day and on every other day between said date and November 20, 1922. That if the said cars had been provided and the said cattle shipped on said day as agreed upon, the said cattle would have reached St. Louis and National Stock Yards, Illinois, in due course of transportation, in time to have been placed on the market at National Stock Yards, Illinois, on the 22d day of October, 1922, but on account of the defendant's failure to furnish and provide the cars as aforesaid, the plaintiff's said cattle did not reach the National Stock Yards, Illinois, until November 20, 1922, and that then the plaintiff was compelled to drive his said cattle to Ellington, Missouri, a station of the Missouri Pacific Railway Company, and located at a great distance from plaintiff's place of business, and shipped over said Missouri Pacific Railway Company to said Market, and that by reason of defendant's failure to furnish said cars, as aforesaid, that the market price of said cattle had declined on the market at the National Stock Yards, Illinois, an average price of $1.25 per hundred pounds between the 22d of October, 1922, and the 20th day of November, 1922, and on account of said decline in the market, the plaintiff had to sell the said cattle, and did sell them for $750 less than they would have brought if they had been placed on the market on October 22, 1922. That the plaintiff was also compelled to expend the sum of $300 in feeding, pasturing,

watering and caring for said cattle during the time he was delayed in shipping the same.

Wherefore, the plaintiff says that he has been damaged by the acts of the defendant aforesaid in the sum of $1,050, for which and for his costs he prays judgment.''

The answer is a general denial, and the shopmen's strike, but defendant stood on its demurrer at the close of plaintiff's case, and no evidence concerning the strike was offered. In the first count plaintiff alleges that on October 20th he notified the defendant at Winona, Mo., that on October 21st he would have at Winona, four car loads of cattle to be shipped from Winona to National Stock Yards, Illinois, and that defendant promised and agreed with plaintiff that on October 21st it would furnish plaintiff the four cars in which to ship said cattle to National Stock Yards, Illinois; that defendant failed to furnish said cars, etc. It will be observed that plaintiff's petition is founded upon an alleged breach of an *agreement* to furnish cars.

Under the law pertaining to car service for interstate shipments defendant could not make a valid *agreement* to furnish cars. The whole subject of car service for interstate shipment is controlled by the interstate Commerce Commission acting under the provisions of the Interstate Commerce Act as amended February 28 1920. [United States Comp. Stat., 1923 Supplement, sec. 8563 et seq.] Paragraph 13 of said section 8563 authorizes the Commission to require all carriers by railroad subject to the act to file with it their rules and regulations with respect to car service. The tariff provision of defendant respecting orders for cars for live stock shipments in interstate commerce filed with and approved by the Commission is as follows: ''Orders for cars must be placed with carrier's agent in writing, a reasonable time in advance, stating the number, size and kind of cars, destination and date wanted. For convenience, cars may be ordered by telephone, in which case

confirmation must be given in writing.'' Rule No. 2798, Circular 17-E of Western Trunk Lines.

In Cornwell v. Davis, Agent, 213 Pac. (Mont.) 218, plaintiff alleged that on September 23, 1918, he was the owner of two hundred and thirteen head of cattle which be desired to ship to market; that the cattle were then upon the public range, some thirty-five miles from Glasgow, Montana; that on September 23rd he ordered from the local agent nine suitable cattle cars to be at Glasgow on October 2nd for the transportation of his cattle to the Union Stock Yards at Chicago; that the local agent then and there agreed with and promised plaintiff that the cars would be furnished at the time and place designated; that the time intervening between the dates mentioned was reasonable; that in reliance upon the promise plaintiff caused his cattle to be driven to a point near Glasgow where they arrived October 1st; that he immediately caused notice to be given to defendant that he would be ready to load on October 2nd; that defendant failed, neglected and refused to furnish the cars on October 2nd, and did not furnish them until October 16th; that plaintiff was compelled to return his cattle to the range for feed, and because of extra handling the cattle were greatly reduced in weight, and because of the delay he was forced to sell upon a lower market. The Supreme Court of Montana affirmed a judgment for the plaintiff predicated upon the facts as stated. The cause reached the Supreme Court of the United States by writ of *certiorari,* which court held that under the provisions of the Interstate Commerce Act tariff provisions must be strictly observed, and that a contract by a railroad company to provide a shipper with cars for interstate shipment on a day certain was void. [Davis v. Cornwell, 264 U. S. 560, 68 L. Ed. 848.] Mr. Justice BRANDEIS speaking for the court said: ''The contract to supply cars for loading on a day named provides for a special advantage to the particular shipper, as much as a contract to expedite the cars when loaded. It was not necessary to

prove that a preference resulted in fact. The assumption by the carrier of the additional obligation was necessarily a preference."

In Missouri Pac. R. Co. v. Henderson, 247 S. W. (Ark.) 1070, it appears that the plaintiff Henderson on October 13, 1919, called the agent at Conway, Ark., and notified him to have a cattle car ready on the 16th for shipment to National Stock Yards, Illinois; that the agent accepted the oral notice; that pursuant to the notice plaintiff drove his cattle a distance of twenty miles to Conway where he was compelled to wait a week before he got a car. Plaintiff sold on a lower market and on the above facts recovered judgment for damages. The Supreme Court of Arkansas recognized that an oral agreement to furnish cars for interstate shipment was void, but construed the cause to be one for the failure to furnish cars "within a reasonable time after notice to do so." The Henderson case also went to the Supreme Court of the United States by writ of *certiorari*. [See Davis v. Henderson, 69 L. Ed.——Adv. Ops. Page 22.] The judgment in the Henderson case was reversed. The court said: "There is no claim that the rule requiring written notice was void. The contention is that the rule was waived. It could not be. The transportation service to be performed was that of common carrier under published tariffs. The rule was a part of the tariff." As supporting the conclusion reached the court cited Georgia, F. & A. R. Co. v. Blish Mill Co., 241 U. S. 190, 60 L. Ed. 948, 36 Sup. Ct. Rep. 541; Missouri, K. & T. R. Co. v. Ward, 244 U. S. 383, 61 L. Ed. 1213, 37 Sup. Ct. Rep. 617; Davis v. Cornwell, supra.

In Underwood v. Hines, 222 S. W. (Mo. App.) 1037, it appears that the agent on March 30th agreed orally with the shipper to have three cattle cars ready on April 2d at Tibbets, Mo., for shipment to National Stock Yards, Illinois. Plaintiff relying upon the contract delivered his cattle at the station, but did not get the cars until a week later. He sued and recovered in the trial court for

extra feed and labor, there being no question of a lower market. The Kansas City Court of Appeals in an opinion by Judge Trimble held that plaintiff could not recover.

A cause of action cannot under the law arise from a breach of contract oral or written to furnish cars for shipment of live stock in interstate commerce, because such a contract under the law is void. The tariffs filed with and approved by the interstate Commerce Commission prescribe the manner in which cars for live stock shipment in interstate commerce shall be ordered. And when the tariff rule is complied with, and the carrier fails to furnish cars as ordered within a reasonable time it is liable to the shipper for a breach of duty created by law, and not for breach of contract.

Plaintiff's petition is bottomed upon a breach of an agreement to furnish cars. His instruction permitted recovery if the jury found "that the plaintiff, on the 20th day of October, 1922, *notified* (Italics ours) the defendant at the station of Winona, Missouri, that on the 21st day of October, 1922, he would have at said station of Winona, Missouri, four car loads of cattle to be carried by the defendant from the station of Winona, Missouri, to St. Louis, Missouri, and to the National Stock Yards, Illinois, and there placed on the market for sale, and if you further believe and find that the defendant failed to furnish said four cattle cars on the 21st day of October, 1922, at Winona, Missouri, or within a reasonable time of said date for the transportation of said cattle to St. Louis and the National Stock Yards, Illinois; and if you further find that between said 21st day of October, 1922, and the 20th day of November, 1922, plaintiff repeatedly requested defendant to furnish said cattle cars, and that during this time the plaintiff had the cattle ready for shipment; and if you further find that the defendant during all this period of time failed and refused to provide said cars for the transportation of said cattle, and that on November 20th, 1922, plaintiff was compelled to, and did, drive his cattle to Ellington, Missouri, and ship

217 Mo. App.—43.

them from said Ellington, Missouri, over the Missouri Pacific Railway Company to St. Louis and National Stock Yards, Illinois; and if you further find that the defendant, St. Louis and San Francisco Railway Company, failed to furnish cars at the time stated therein, or within a reasonable time thereof, and that plaintiff was damaged by reason of the failure of defendant to furnish said cars for the transportation of plaintiff's cattle within a reasonable time after said notice, if they did fail to furnish cars, then you should find the issues for the plaintiff under the first count of his petition and give his whatever damages you believe, from the evidence, that he has sustained, as defined in this and other instructions, but not exceeding the sum of $1,050.''

Under the most liberal construction this instruction would permit recovery if the jury found that plaintiff *notified* orally or in writing defendant that on a certain date he would need four cars, and further found that defendant failed to furnish said cars on said date or within a reasonable time thereafter. Under this instruction the order for the cars was not required to be in writing, and the record does not definitely show that the order for these cars was in writing. Furthermore by way of emphasizing that an oral order was sufficient the instruction directs attention to the evidence tending to show that Plaintiff repeatedly requested defendant to furnish said cars after October 21st. The first count of the petition should be amended and all references to agreements to furnish cars and breach thereof should be eliminated, and plaintiffs cause, if such he has, stated as for a breach of duty to furnish cars for interstate shipment after reasonable notice in writing. And the instruction, if any is given, should conform to the law pertaining to the furnishing of cars for interstate shipment as herein stated.

Defendant challenges the instruction on the measure of damages on the first count and complains of the refusal of its instruction on the same subject. Plaintiff's

instruction permitted recovery for the following: (1) The difference between the market price at National Stock Yards when the cattle should have arrived had there been no delay, and when they did arrive after the delay; (2) a reasonable amount for feed, pasture and labor in caring for the cattle during the delay. Defendant's refused instruction limited the damages to the difference between the market value of the cattle at National Stock Yards, Ill., on the day when the cattle would have arrived had there been no delay, and their market value at Winona, Mo., on same date.

At common law it is the duty of railroad companies to furnish cars to shippers upon reasonable notice. [10 C. J., p. 73, sec. 66; Darlington Lumber Co. v. Railroad, 216 Mo. 658, 116 S. W. 530; Baker v. Railroad, 145 Mo. App. 189, 129 S. W. 436; Merritt Creamery Co. v. Railroad, 128 Mo. App. 430, 107 S. W. 462.] The Interstate Commerce Act making it the duty of railroad companies to furnish cars to shippers upon reasonable notice is merely declaratory of the common law. [10 C. J., p. 73, sect. 66; Pennsylvania R. Co. v. United States, 227 Fed. 911; note to Illinois Central Railroad Co. v. River & Rail Coal & Coke Co., 44 L. R. A. (N. S.) 643.] Since the Interstate Commerce Act making it the duty of railroad Companies to furnish cars to shippers upon reasonable notice is merely declaratory of the common-law duty the same measure of damages for failure to furnish care would be applicable under the Interstate Commerce Act as under the common-law, unless the Interstate Commerce Act provided otherwise. There is no provision in the Act or any of its amendments which prescribes a rule for estimating the damages to an interstate shipper because of a failure to furnish cars within a reasonable time after notice.

In Morrison v. St. Louis-San Francisco Ry. Co., 264 S. W. 449, we stated the rule for the measure of damages for failure to furnish cars for intrastate shipment. In the absence of a statute we believe that the same rule

should prevail as to interstate shipments. In the Morrison case we said: "The measure of damages which result from delay in shipment, and applicable, we think, for damages resulting from unreasonable delay in furnishing stock cars, is the difference in the market price at the place of destination when the shipment should have arrived and when it did arrive, plus the additional expense incurred because of the delay." We would modify this rule by limiting the additional expense incurred to read: "Plus a reasonable expense incurred because of the delay."

On a retrial the instruction on the measure of damages will be so framed as to conform to the rule as herein stated. The judgment as to the second count is affirmed, and as to the first count the judgment is reversed and cause remanded. The whole cause, however, is remanded, and when final disposition on the first count is made, judgment on the whole cause will be entered. It is so ordered. *Cox, P. J.*, and *Bailey, J.*, concur.