H. D. MOURER ET AL., RESPONDENTS, v. WABASH RAILWAY COMPANY, APPELLANT.[*]

Kansas City Court of Appeals. March 1, 1926.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 885, p. 979, n. 51; Carriers, 10CJ, section 42, p. 56, n. 36; section 224, p. 179, n. 71; section 309, p. 224, n. 95; section 415, p. 293, n. 98; section 429, p. 301, n. 4; section 438, p. 304, n. 51; section 451, p. 313, n. 54; Commerce, 12CJ, section 114, p. 86 n. 48; Evidence, 22CJ, section 167, p. 199, n. 36; section 1138, p. 929, n. 75.

*Earl E. Fogle* and *Allen Rolston* for respondent.

*Homer Hall* and *Higbee & Mills* for appellant.

BLAND, J.—This is a suit for negligent delay in the transportation of two carloads of sheep and lambs; the first count covering a car shipped from Queen City, Missouri, to the National Stock Yards at East St. Louis, Illinois, and the second count a car shipped from Glenwood, Missouri, to the same destination. The case was tried before the court without the aid of a jury. There was a judgment in favor of plaintiffs on the first count in the sum of $261.95 and on the second count in the sum of $513.05. Defendant has appealed.

The facts show that sometime prior to August 23, 1922, plaintiffs arranged with the agents of defendant at Queen City and Glenwood to have a car at each station for shipment of sheep on that day. The cars were timely furnished and the live stock was delivered at the stock pens of the defendant at Queen City and Glenwood on that morning. Under ordinary circumstances these cars should have been taken up by a train of defendant about noon of that day. What was known as the shop craftsmen's strike was in existence at that time and defendant was unable to run its trains on that day for the purpose of taking up shipments to East St. Louis. Upon learning that there would be no train, the sheep and lambs in the stock pens at Glenwood were taken out of the pens by plaintiff and put in a near-by pasture. Had the shipments started to move at the usual time they would have arrived at the National Stock Yards in time for the market on Thursday, August 24th, and not later than Friday, the 25th, but through delay they did not arrive until the 25th, too late for the market of that day. There was no market for sheep on Saturday. At least, if there was any market on that day, it was a very unfavorable one, so the shipment was held over until Monday, the 28th, when the sheep were sold. This suit is for damages for decline in the market value of the stock, extra feed and extra shrinkage.

Defendant pleaded a provision of the contracts of carriage as follows: "Except in case of negligence proximately contributing thereto no carrier . . . shall be liable for any loss (of the live stock) or damage thereto or delay caused . . . by riots, strikes, stoppage of labor or threatened violence." One of the contracts was endorsed: "Rec'd subject to delay. Acc't strike condition," and the other, "subject to delay." Defendant's evidence tended to show that it was unable to furnish an engine in order to take up the cars of stock on

the 23rd, and, in fact, until an engine actually arrived, on account of the existence of the strike. It introduced testimony to the effect that the strike affected the railroads all over the country; that it made an effort to replace the strikers with other men but through violence of the strikers and their sympathizers it was unable to do so; that by reason of sabotage some of the engines were in such condition that trainmen were afraid to use them and would not take them out. There was no attempt made by either party to show whether the strike was caused through the fault of the defendant or whether it had taken any steps to adjust the same. The strike had been in existence for several months prior to the time of the shipment.

At the close of the testimony defendant offered an instruction in the nature of a demurrer to the evidence which the court overruled and it is now insisted that the court erred in so doing and in finding for plaintiff because it is claimed that the delay was brought about by the strike, which exempted defendant from liability. The alleged error of the court in overruling the demurrer to the evidence is not preserved in the motion for a new trial and we may not consider this question. [Polski v. City of St. Louis, 264 Mo. 458.]

It is insisted that the court erred in admitting plaintiffs' exhibits 1 and 2. We are unable to find these exhibits in the record, they, unquestionably, have been omitted by the defendant. Over the objection of defendant, the court permitted plaintiff, James M. George, to answer the following question: "Q. What would be the shrinkage on such wethers if taken out of the pens on or before noon on Wednesday and taken to a pasture and there kept till noon the next day, and loaded in a car and shipped to the National Stock Yards, were there the next day and then held until the next morning?" The answer was "from twelve to fourteen pounds." Over the objection of defendant, the court permitted plaintiff Mourer to answer a similar question, which was answered in the same way. When the sheep were returned to the defendant's pens at Glenwood on the 24th, the agent issued a contract of shipment but the plaintiff who had the matter in charge denied signing this contract. The agent testified that this was a small station and that he did not stay at the depot all of the time but that he left the contract in the customary place for the shipper and that it was gone when he returned. We think that the testimony quoted supra was incompetent. The action is for delay in the transportation of the animals. When the sheep were taken to Glenwood on the twenty-third a bill of lading was signed by the parties and delivered to one of the plaintiffs. Finding out on the following day that he could not ship them, he took the sheep from the possession of the defendant and put them on a near-by pasture, thus withdrawing the stock temporarily from transportation. [10 C. J., pp. 224-226.] Under the petition there could be no recovery for loss due to taking the animals to the pasture. A more serious matter was the admission in

evidence of the alleged account sales. There was no evidence that plaintiffs' Exhibit A was in fact the account sales. One of plaintiffs' witnesses sought to testify that it was received through the mails by another but this was purely hearsay and the witness was finally forced to admit that he could not swear to this alleged fact. Plaintiffs insist that defendant's witness, Nifong, identified this account sales but the record shows that it was another account sales that Nifong referred to. The witness McCarthy identified an account sales but there is no showing that the one introduced in evidence was the same one. Without the account sales there was no evidence as to what plaintiffs' recovery should be. We think the court erred in permitting the witness McCarthy to testify that the entries of the scales tickets of the stock yards company showed that the weight of the shipment was correct. This was hearsay.

The judgment is excessive to the amount of the claim for extra feed. There is no evidence that the bill for this item was reasonable. [Mitchell v. Violette, 221 S. W. 777; Williams v. Railway, 274 S. W. 935, 938, 939.] This matter was covered in the motion for a new trial.

No doubt the case will be tried again and it is proper for us to pass upon some other contentions. This being an interstate shipment, of course, it is governed by the Federal laws as interpreted by the United States courts. [Baker v. Schaff, 211 S. W. 103, 104.] In reference to the strike clause pleaded, this clause of the contract was a valid one even though the strike was in existence at the time the contract was made. [Warner v. St. Louis & San Francisco Ry. Co., 274 S. W. 90; Jonesboro, etc., Rd. v. Maddy, 157 Ark. 484; 10 C. J., p. 293.] And defendant having introduced evidence tending to show the existence of the strike and that the delay was caused thereby, if there was any negligence on the part of defendant in connection with the strike or delay, the duty was upon plaintiffs to introduce evidence of such negligence. [Cau v. Texas & Pacific Ry. Co., 194 U. S. 427; Washburn-Crosby Co. v. William Johnston & Co., 125 Fed. 273; The Henry B. Hyde, 90 Fed. 114; Transportation Co. v. Downer, 11 Wall. 129.]

There was an unexplained delay shown that had no connection with the strike. It was shown that the two shipments arrived in St. Louis at 6:00 A. M. on the 25th; that three hours was a reasonable time to convey such shipments from that point to the National Stock Yards whereas they did not arrive at the latter point until 2:05 P. M. There was testimony that a car of stock that was shipped in the same train was seen in pens at the National Stock Yards about 8:00 or 9:00 A. M. of that day. However, the burden of proving negligent delay was upon plaintiffs and mere proof of one unexplained delay is not sufficient to make a case of "negligent delay." [Baker v. Schaff, supra; McFall v. Railroad, 181 Mo. App. 142, 149; McMickel

v. Wabash Ry. Co., 209 S. W. 611, 613.] There are other questions raised that may not arise again so it is not necessary for us to pass upon them.

The judgment is reversed and the cause remanded. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.